## Nellie Highland

*v.*

## Jane Highland.

*Filed at Springfield March 26, 1884.*

1. Wills—*necessity of witnesses.* The day before the death of a person there was found in his pocket the following writing: "To my dear-wife: I want you to have all my effects—everything. Tell my sister, if you ever hear from her, I want to be buried in Woodland cemetery, and want Mr. A., of the Congregational church, to preach my funeral ceremony. I give everything to my wife." The writing was signed, but had no witnesses to it: *Held,* that the paper could not be treated as a will.

2.  SAME—*what constitutes a will—indorsement on a benefit certificate.*
A member of a lodge of the Knights of Honor had issued to him a benefit
certificate, in the sum of $2000, to be paid on his death to such person or
persons as he might, by will, or entry on the record book of the lodge, or on
the face of the certificate, direct.   The constitution of the lodge provided,
that "any brother may cause to be entered upon the reporter's record book a
direction to whom his benefit shall be paid,  *  *  *  or he may have a benefit
certificate issued to him.  *  *  *  In case no direction is made by a brother,
either by will, entry or benefit certificate, this lodge may cause the same to
be paid to the person or persons entitled thereto."   Before his marriage he
indorsed upon the certificate the following:   "To the officers and members
of the Supreme Lodge, Knights of Honor:   Brothers, it is my will that the
benefit named in this certificate be paid to my sister, J. H.," to which his
name was subscribed, and the same was attested by two witnesses.   This in-
dorsement was all printed, except the words, "*my sister, J. H.,*" but the cer-
tificate, with the indorsement, was never delivered to the sister.   His widow
claimed that this indorsement was a will, which was revoked by his subse-
quent marriage:   *Held,* that in view of the circumstances stated it could not
be regarded as a will, but a special direction to whom the benefit should be
paid, in one of the modes authorized by the constitution of the lodge and
the certificate.

3.  INSURANCE, *or benefit certificate—power of disposition—and to whom
it will inure in the absence of direction.*   Where the charter of a lodge de-
clares that one of its objects is "to promote benevolence and charity, by
establishing a widows' and orphans' benefit fund, from which, on satisfactory
evidence of the death of a member of the corporation who has complied with
its lawful requirements, a sum not exceeding $5000 shall be paid to his
family, or as he may direct," the benefit fund will remain for the benefit of
the widow and orphans of each member, unless he shall direct to the con-
trary, and this he may do to the exclusion of his widow and family.

4.  SAME—*direction as to whom to be paid—delivery not necessary.*
Where a benefit certificate of a member of a lodge was made payable, at the
holder's death, to such person as he might, by will, or entry on the record
book of the lodge, or on the face of the certificate, direct, and he did direct
on the face of the same to make payment to his sister, but never delivered
the same to her, it was *held,* that no delivery was necessary, as the sister's
claim was not based on a contract, but upon a direction for payment of the
benefit fund to her.

5.  SAME—*what will amount to a direction as to payment.*   Where a
party died holding a benefit certificate in a lodge in the sum of $2000, pay-
able to such person or persons as he might direct on the face of the certifi-
cate, a writing found in his pocket the day before his death, not directed to
the lodge, but to his wife, without date, stating that he wanted her to have
all his effects, it was *held,* that such writing could not be regarded as pur-

porting to dispose of the money, or as a direction to whom it should be paid, different from a previous specific one.

6. ADMINISTRATION OF ESTATES—*insurance money—whether assets of the deceased.* Where a benefit certificate given to a member of a lodge provides that on his death a certain sum of money shall be paid to such person or persons as he may, by will, or entry on the record book of the lodge, or on the face of the certificate, direct, and he, before his death, by indorsement on the face thereof, directs it to be paid to his sister, the amount can not be regarded as assets of the estate of the deceased member, and will not go to his personal representatives.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

Messrs. EMMONS & WELLS, and Mr. M. PIGGOTT, for the appellant:

The indorsement on the face of the certificate of membership by the deceased, was a will, under the statutes of this State. It was made in writing, signed by him, and attested by two witnesses. It was not necessary that Highland should have declared it as his will, or that the attesting witnesses should be aware of the fact it was his will. *McBride* v. *McBride*, 26 Gratt. 476; *Dickie* v. *Carter*, 42 Ill. 376; *Hogan et ux.* v. *Grosvenor*, 10 Metc. 54; *Allison* v. *Allison*, 46 Ill. 61.

Being a will, the subsequent marriage of the testator was a revocation. Rev. Stat. chap. 39, sec. 10; *In re Tuller*, 79 Ill. 99; *Tyler* v. *Tyler*, 19 id. 151.

The word "family," as used in the charter and constitution of the lodge, means a household, including husband, wife, children and servants. *Chicago and Northwestern Ry. Co.* v. *Chisholm*, 79 Ill. 587.

The following has been held a will, and admitted to pro-bate: "Dear Old Nance: I wish to give you my watch, two shawls, and also $5000. Your friend, E. A. Gordon." *Clark* v. *Ransom*, 50 Cal. 595. See, also, *Nichols* v. *Chandler*, 55 Ga. 369; *McBride* v. *McBride*, 29 Gratt. 476.

The voluntary gift to the sister was contingent and ambulatory, and was revoked by his death, leaving a widow. *Richmond* v. *Johnson,* 13 Rep. 111; Bliss on Life Insurance, 567; *Connecticut Mutual Life Ins. Co.* v. *Burroughs,* 34 Conn. 305; *Durain* v. *Central Verein,* 7 Daly, 168.

A policy of life insurance is subject to the same rules in respect to its assignment, as other choses in action, and an assignment without delivery is invalid. *Marcus* v. *St. Louis Mutual Life Ins. Co.* 13 N. Y. 31; 3 Law & Eq. Rep. 500.

The charter of the lodge was a part of the contract, and it is not in the power of a member, or of the lodge, or both, to alter, vary or defeat the rights of those who, by the charter and laws of the lodge, are declared to be the beneficiaries, except in the mode and to the extent therein expressed. *Kentucky Masonic Mutual Life Ins. Co.* v. *Miller,* 13 Bush, 489.

Messrs. HYNES, ENGLISH & DUNNE, and Messrs. EWING & HAMILTON, for the appellee:

The only reasonable construction of the clause of the charter as to the power of disposition is, that if the deceased member has given direction, in either of the ways provided in the rules of the order, for the disposition of his benefit fund, it must be paid as he directs, and if no direction is given, the payment will be to his family, or to the persons lawfully entitled thereto.

The disposition of the fund was not a testamentary act, but a direction to whom payment should be made, in accordance with the rules of the lodge. The fact that the words "my will," are used, makes no difference. The direction was by the filling up of a blank printed on the certificate.

The letter found in Highland's pocket can not be regarded as a will. It has no date or venue, nor does it mention this insurance in any way, and it is not witnessed by any one.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

On the 21st day of March, 1878, Henry M. Highland, being then unmarried, became a member of Oriental Lodge, No. 777, Knights of Honor, at Quincy, Illinois, it being a branch of the "Knights of Honor," a corporation existing under the laws of the State of Kentucky. A certificate of membership was issued to him, of which the following is a copy:

"BENEFIT CERTIFICATE.

"This certifies that Henry M. Highland has received the degree of manhood; that he is a beneficiary member of this lodge in good standing; that in accordance with and under the provisions of the laws governing the order, the sum of $2000 will be paid by the Supreme Lodge, Knights of Honor, as a benefit, upon due notice of his death, and the surrender of this certificate, to such person or persons as he may, by will, or entry on record book of this lodge, or on the face of this certificate, direct the same to be paid, provided he is in good standing when he dies.

"Given under the seal of *Oriental* Lodge, No. *777*, Knights of Honor, at *Quincy, Illinois*, this *21st* day of *March, 1878*.

B. L. Ayers, Dictator.
David G. Williams, Reporter."

Upon which is the following indorsement, under the signature of said Highland:

"To the officers and members of the Supreme Lodge, Knights of Honor:

"Brothers—It is my will that the benefit named in this certificate be paid to *my sister, Jane Highland.*

Henry M. Highland.
(Signature of holder.)

"Witness, *Geo. F. Jasper.*
"Witness, *David G. Williams.*

Highland remained a member of the lodge, paying all assessments, and being in good standing, until the 15th of November, 1880, at which time, at Kansas City, Missouri, he committed suicide. On the 15th of September, 1880, he was married, at Quincy, Illinois, and he died leaving no child or the descendant of a child. The certificate above named was never delivered to Jane Highland, the person named in the indorsement, but remained in the possession of Henry M. Highland until his death. On the 15th of January, 1881, the Supreme Lodge issued its order upon the treasurer to pay the money mentioned in the certificate to said Jane Highland, which order was forwarded to the trustees of the Supreme Lodge, at Quincy, for delivery to her, but before the same was delivered this bill in equity was brought by Nellie Highland, the widow of Henry M. Highland, against Jane Highland, Supreme Lodge, Knights of Honor, and others, to have payment of said money decreed to the complainant, as such widow, and by direction of the court the money was paid to the clerk thereof, and the lodges discharged of all liability. On final hearing in the circuit court, a decree was rendered in favor of the complainant, which, on appeal to the Appellate Court for the Third District, was reversed, and the complainant appeals to this court.

The simple question presented is, whether the complainant, as the widow of Henry M. Highland, or the defendant, Jane Highland, as the person to whom said benefit fund was directed to be paid, is entitled thereto.

It is insisted that the indorsement by Henry M. Highland on the face of the benefit certificate, being in writing, and attested by two witnesses, was a will, under the statute of this State, and that the subsequent marriage of Highland revoked the will, under our law, and left the distribution of this benefit fund, under the provisions of the charter and by-laws of said Knights of Honor, to be made to his widow, as a case where there was no direction as to its disposition. This

indorsement, in determining its character, is to be viewed differently from an ordinary, independent writing, to be judged of by itself alone. . It is to be passed upon in the light of the special circumstances under which it was made. It is a provision of the constitution of the subordinate lodge, that "any brother may cause to be entered upon the reporter's record book a direction to whom his benefit shall be paid, * * * or he may have a benefit certificate issued to him. * * * In case no direction is made by a brother, either by will, entry or benefit certificate, this lodge may cause the same to be paid to the person or persons entitled thereto." And in accordance therewith the benefit certificate issued to the member expresses that the benefit will be paid to such person "as he may, by will, or entry on record book of this lodge, or on the face of this certificate, direct the same to be paid." Thus it will be seen that both by the constitution and the benefit certificate there are prescribed three different modes of direction to whom the payment shall be made, namely, by will, entry on the record book of the lodge, or direction on the face of the benefit certificate. Direction by will, or by entry on the face of the benefit certificate, are contra-distinguished from each other,—they are not contemplated to be one and the same. Therefore the indorsement in question naming to whom the payment should be made, is the adoption of that mode of directing payment to be made which is provided for by entry on the face of the benefit certificate, as distinguished from the mode of direction by will.

As more fully marking the character of this indorsement on the face of the benefit certificate as not a will, it appears that the certificate and indorsement are printed, except the words in italics. Thus, Highland's indorsement, except his signature and the words "*my sister, Jane Highland,*" was printed on the face of the certificate furnished by the lodge, so that we must suppose that in furnishing this printed blank indorsement, and in signing it, it was the understanding and

intention of both parties that such indorsement was not the last will of Highland, but that it was the special mode of direction of payment provided for by entry on the face of the certificate. No intention of making a will is disclosed. We do not regard the use of the word "will," in the writing, as of any more significance, under the circumstances, than if "wish," "request" or "direction" had been used instead. The indorsement was, in purport, a communication addressed to the officers of the lodge, directing them to whom to pay the benefit named in the certificate. To call it a will, would be, by a forced construction, to make it something which it does not purport and was not intended to be, and we can not recognize it to be such. The fact of the benefit certificate, with the indorsement on it, never having been delivered to appellee, but remaining in Highland's possession, detracts nothing from the effect of such indorsement as a direction for the payment of the money. Appellee's claim of right to the fund does not rest upon *contract*, but upon a *direction* for its payment to her.

It is urged that by the terms of the charter or act of incorporation of the order, the fund out of which appellee seeks payment is established as a "widows' and orphans' benefit fund," which is sacred to the relief of widows and orphans, and that it is not in the power of the member, or of the lodge, or both, to alter or defeat the right of those who by the charter are declared to be the beneficiaries. The charter, among the objects of the corporation, declares to be: "To promote benevolence and charity, by establishing a widows' and orphans' benefit fund, from which, on the satisfactory evidence of the death of a member of the corporation who has complied with its lawful requirements, a sum not exceeding five thousand dollars ($5000) shall be paid to his family, or as he may direct." It is insisted that this makes the primary object to be the establishment of a *widows'* and *orphans'* fund, and that it is only in the absence of a family that the

member may direct to whom the benefit shall be paid, or at least, where there be a family, that the power of direction is limited to naming the *proportions* in which the fund shall be divided among them. No doubt it is an object to provide a widows' and orphans' benefit fund, and it will remain as such a fund, unless the member directs to the contrary. But notwithstanding the description as a "widows' and orphans' benefit fund," it is equally the purpose that the member should have the power of directing to whom payment of his benefit should be made, as that the fund is to be for the benefit of his family. The language that the sum shall be paid to the member's "family, or as he may direct," gives to him, in the most plain terms, the power of absolute direction to what person or persons the payment shall be made. Evidently the language of the charter will not bear the construction which appellant's counsel would place upon it.

There is some evidence in the record of a desire and attempt on the part of Highland, after his marriage, to have a change made in the benefit certificate, in favor of his wife, which we need not consider, as no change was made, and any mere intention in that way we could not give effect to.

There was found in the pocket of Highland, the day before his death, the following writing:

"*To my dear wife:*

"I want you to have all my effects—everything. Tell my sister, if you ever hear from her, I want to be buried in Woodland cemetery, and want Mr. Anderson, of the Congregational church, to preach my funeral ceremony. I give everything to my wife.          H. M. HIGHLAND."

This writing being without a witness, can not be pretended to be a will. Without passing upon the question whether there could be any valid direction for the payment of this benefit fund except in one of the three specific modes prescribed in the benefit certificate, we do not regard this as a

writing purporting to dispose of the fund, or to direct to whom it should be paid. This fund,—at least in this case, where there was a direction for its payment,—was not effects of the deceased,—it would not go to his personal representatives, as his property would,—but it was merely a benefit, which, after his death, the lodge were to pay to whom he had directed it to be paid. Having, by previous indorsement on the benefit certificate, disposed of the benefit by directing to whom it should be paid, in the precise mode in which the rules of the lodge required the direction should be made, the generality of the words of disposition contained in this writing should not be held to embrace this particular benefit, which had previously thus been disposed of. To give to this writing the effect of revoking the former direction, and giving a different direction for the payment of this benefit, there should have been specific reference made to it, and the unmistakable intent shown, to produce such specific effect. The general language of this writing does not manifest that intent, and it is not to be held to have the effect above named.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*