SOLOMON HYSINGER *et al.*, Appellants, v. SUPREME LODGE, KNIGHTS AND LADIES OF HONOR, Respondent.

St. Louis Court of Appeals, December 23, 1890.

1. **Mutual-Benefit Societies:** DISPOSITION OF INSURANCE. The charter of a foreign mutual-benefit society, and its certificate of membership, provided that, upon the death of a member, a certain fund should be paid to his family, or as he might direct. *Held* that a member had absolute power to make any disposition of such fund not repugnant to the declared purposes of the society,

| 42 | 627 |
|----|-----|
| 44 | 453 |
| 42 | 627 |
| 56 | 474 |
| 42 | 627 |
| 59 | 23 |
| 42 | 627 |
| 73 | 42 |
| 42 | 627 |
| 100 ³ | 92 |

and could, therefore, direct that the fund should be paid to trustees to defray the expense of his funeral and the improvement of his burial place.

2. —— : ——. The choice of beneficiaries of benefits in the nature of insurance, when the corporation is organized in this state, is confined to some member of the family of the assured, or to some person or persons dependent on him, and, therefore, a contract by the society to pay these benefits to trustees for the aforesaid purposes is *ultra vires*.

3. —— : CHANGE IN CONTRACT OF INSURANCE WITHOUT THE CONSENT OF MEMBERS. A foreign mutual-benefit society by a certificate of membership issued by it agreed to pay benefits in the nature of insurance on the life of a member in a designated manner, which was in accordance with its foreign charter, but contrary to the disposition permissible under the laws of this state in the case of a domestic mutual-benefit society. *Held* that the provision in the certificate of membership was a contract which the society could not change without the consent of the member, and that it was, therefore, not affected by the reincorporation of the society under the laws of this state, subsequent to the issue of it, and the adoption of articles of association which provided for the payment of such benefits in conformity with our laws.

4. Foreign Mutual-Benefit Societies: COMITY OF STATES. The contract of a mutual benevolent society, made in conformity with the charter of the society, and providing for the payment of benefits in the nature of insurance to trustees to defray expenses of interment, will be enforced, though made in this state, and though such application of the benefits would have been contrary to our statutes if made by a domestic corporation.

5. Mutual-Benefit Society: RIGHT OF ACTION BY TRUSTEES OF A SUBORDINATE LODGE. The trustees of a subordinate lodge of a mutual-benefit society have the right to act as trustees for a member and to institute suit against the society for the enforcement of such trust.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Frank M. Estes*, for appellants.

*Boyle, Adams & McKeighan*, for respondent.

BRIGGS, J.—The defendant corporation is a benevolent or charitable institution.    It was first incorporated by a special act of the legislature of the state of Kentucky, passed and approved on the first day of April, 1878.    The purposes of the corporation are thus stated in the original charter:    "To give all possible moral and material aid in its power to its members and those depending on its members,    *    *    *    and to promote benevolence and charity by establishing a relief fund from which, on satisfactory evidence of the death of a member of the corporation, who has complied with its lawful requirements, a sum not exceeding one thousand dollars shall be paid to his or her family, *or as he or she may have directed.*"    After its incorporation the defendant, through its supreme lodge, adopted a constitution.    Subdivision three (3) of article two (2) of this constitution was as follows:    "To promote benevolence and charity by establishing a relief fund from which, on satisfactory evidence of the death of a member of the corporation, who has complied with all its lawful requirements, a sum not exceeding one thousand dollars shall be paid to their family, *or as they may direct*.    The charter also authorized the organization of such supreme and subordinate lodges, as its officers might deem necessary to the accomplishment of the objects and purposes of the corporation.    In pursuance of this authority, "Pride of the West Lodge, number 790, Knights and Ladies of .Honor," was organized in the city of St. Louis.    On the twenty-second day of June, 1885, one William J. Levin joined this subordinate lodge.    On that day the defendant issued and delivered to Levin the following certificate:    "This certificate issued by the Supreme Lodge, Knights and Ladies of Honor, witnesseth:    That William J. Levin, a member of Pride of the West Lodge, number 790, of said order, located at St. Louis, in the state of Missouri, is entitled to all the rights and privileges of membership in the order of Knights and Ladies of Honor, and

to participate in the relief fund of the order to the amount of one thousand dollars, which sum shall, at his death, be paid to the trustees of Pride of the West Lodge, number 790, for his burial, and improvement of lot in Bellefontaine cemetery. This certificate is issued upon the express condition that said William J. Levin shall, in every particular, while a member of said order, comply with all the laws, rules and requirements thereof." Levin died in February, 1889. It is admitted that he paid all dues and assessments, and that, at the time of his death, he was a member of the order in good standing. The plaintiffs are the trustees of the Pride of the West Lodge, and they seek, in this action, to recover from the defendant the amount due under the foregoing certificate.

Several defenses are made to the action. In the first place the defendant says that, under the present constitution of the order and its subsequent reincorporation under the laws of Missouri, the plaintiffs cannot take as beneficiaries or trustees for the purposes stated in the certificate. In support of this defense, the defendant set forth in its answer that, subsequent to the date of Levin's certificate, it was further incorporated under the provisions of article ten (10), chapter twenty-one (21), Revised Statutes of Missouri, 1879. The articles of association adopted by the defendant under this last act of incorporation were read in evidence, and the objects and purposes, as therein stated, were the same as stated in the original charter, but there was quite a material change made in the insurance clause. It was provided that, upon the death of each member, the amount of the indemnity stipulated in his certificate should be paid "*to such member or members of his or her family, person or persons dependent on or related to him or her, as he or she may have directed.*" The defendant also set up in its answer, and established on the trial, that, at the biennial meeting of the supreme

lodge held in September, 1885, the defendant's constitution was revised; that subdivision three (3), article two (2), of the constitution was amended so as to conform to the defendant's articles of incorporation, as required by the Missouri statute; that, under this amendment, the beneficiary in a certificate must either be a member of the family of the deceased, or in some way related to or dependent upon him. As a further defense it is insisted that the plaintiffs, being trustees of one of the defendant's subordinate lodges, could not become trustees or beneficiaries of the benefits of Levin's certificate, nor have they the legal capacity to sue the defendant. There is no controversy about the facts. The foregoing statement is believed to be sufficient to a full understanding of the legal propositions presented by the record. The trial judge was of the opinion that the plaintiffs could not recover, and a judgment was rendered accordingly. The plaintiffs have appealed the case.

It is conceded by the defendant that it was first incorporated by a special act of the Kentucky legislature with authority to establish subordinate lodges in other states, in order to promote the interests of the society by an increase of its membership. It is also admitted that Pride of the West Lodge was established in St. Louis under the Kentucky charter, and that while the defendant was working under this charter, Levin became a member of the order, and the certificate sued on was issued to him by the defendant; that Levin paid all dues and assessments, and was a member in good standing at the time of his death. The defendant denies its liability on three grounds: *First.* That the original object of the association was to promote benevolence and charity and relieve the sick and distressed; therefore, a certificate, which by its terms provides for the payment of a benefit to pay the burial expenses of a member, or for the improvement of his burial lot, is

entirely foreign to the objects or declared purposes of the corporation ; *second*, that, if it be conceded that the Kentucky charter is in its terms broad enough to authorize the payment of the certificate, yet the contract is *ultra vires* under the Missouri statute, which confines the beneficiaries in such certificates to the family of the member or to persons *dependent* upon him ; *third*, that the plaintiffs are the trustees of one of the defendant's subordinate lodges, and for this reason they lack the legal capacity to maintain the action.

Opposed to these views, the plaintiff's counsel insists that the Kentucky charter must govern in the enforcement of the contract ; that the subsequent reincorporation of the defendant under the Missouri statute and the subsequent amendment of the defendant's by-laws in respect of the beneficiaries, did in no way change or affect Levin's previous contract of insurance ; that the defendant's Kentucky charter is broad enough to confer on the members of the association unlimited authority to select any person as the object of their bounty, or, as in this case, to direct the application of the fund to any worthy purpose ; therefore, the contract herein sued on is not subject to the charge that it was *ultra vires* of the corporation. The plaintiffs make the further contention that, even though it be held that the Missouri law must govern, yet the defendant cannot interpose the defense of *ultra vires*, because the contract has been fully performed by Levin ; that under this view, so long as Levin was alive and the contract remained executory, it was within the power of the defendant to recede from it upon equitable terms ; but on Levin's death the contract became fully executed on his part, and the defendant ought not to be permitted to escape liability on this ground.

Section two (2) of the defendant's original charter reads : "The objects of the corporation shall be to unite fraternally all acceptable members of the order known as the Knights of Honor, their wives,

mothers, widows and unmarried daughters, or sisters over eighteen years of age ; to give all possible moral. and material aid in its power to its members, and those depending on its members, by holding moral, instructive and scientific lectures, by encouraging each other in business, and by assisting each other to obtain employment ; to care for the sick and distressed, and to promote benevolence and charity by establishing a relief fund, from which, on satisfactory evidence of the death of a member of the corporation who has complied with its lawful requirements, a sum not exceeding one thousand dollars shall be paid to his or her family, or as he or she may have directed ; to provide for creating a fund for the relief of sick and distressed members ; to ameliorate the condition of humanity in every possible manner." The words in the charter, "*or as he or she may have directed,*" gave to Levin absolute power to make any disposition of the fund due under the certificate ; provided such disposition was not repugnant to the declared purposes of the corporation. *Gentry v. Supreme Lodge, Knights of Honor,* 23 Fed. Rep. 718 ; *Duvall v. Goodson,* 79 Ky. 224 ; *Lamont v. Grand Lodge,* 31 Fed. Rep. 177 ; *Highland v. Highland,* 109 Ill. 366. One of the objects of the defendant corporation is, "to promote benevolence and charity," and to this end a relief fund was provided for. We cannot agree with the defendant that the object of Levin, in providing the means to defray his own burial expenses and to improve the lot where he was to be buried, was not a benevolent or charitable one. It was a very natural impulse for him, if he was without property, or kindred, to provide against the contingency of being buried at the expense of the public in an unmarked grave. This might very well be regarded as an act of charity. To say the least, the matter is debatable, and, as the defendant accepted Levin's money, and permitted him to live and die under the belief that his body would be decently taken care of after his death, we are of the

opinion that the corporation is in no position to split hairs in the discussion of the question. We, therefore, hold that the contract was authorized by the defendant's Kentucky charter.

But, if the contract with Levin is to be governed by the Missouri statute, then it must certainly be held to be *ultra vires*. When the law or charter of such an institution confines the beneficiaries to a particular class, the corporation can only accumulate a fund for the benefit of such persons who may fall within the class and are named as beneficiaries. Under our statute the choice of beneficiaries, when the corporation is organized in this state, is confined to some member of the family of the assured, or to some person or persons *dependent* upon him. It is quite clear, therefore, that the direction made by Levin in his certificate would, under the Missouri statute, subject the contract to the charge of being *ultra vires*.

The defendant's contention is that the plaintiffs do not stand in the relation of creditors of the corporation possessing vested rights; that they possessed no such right during the life of Levin, and that the by-law and constitution of the defendant were subject to amendment in any respect without the consent of either Levin or the plaintiffs, and without notice to either. The authorities relied on by the defendant to support this proposition do not treat of the change of by-laws, which constituted a part of the insurance contract. Section 92 of Bacon's Benefit Societies, to which we are referred, treats of the change or repeal of by-laws in respect of sick benefits. The authorities cited in the text (*St. Patrick's, etc., Society v. McVey*, 92 Pa. St. 510; *Poultney v. Bachman*, 62 How. Pr. 466) hold that any change in the by-laws in reference to sick benefits is binding on all members, whether notified of the change or not, provided the change is made before the sickness of a member began. The theory upon which this doctrine is sustained is that, as to sick benefits, the member has

no vested rights, and that the company at any time can modify or repeal a by-law in reference thereto. But how can this doctrine be applied to a contract of insurance made with such a company? Levin made a valid and binding contract of insurance, which the defendant was not at liberty to repudiate, so long as he paid his dues and assessments, and otherwise observed the rules and regulations of the order. If the defendant had attempted to deprive him of the rights of a member (which included his interest in his certificate of insurance), by an unlawful expulsion from the order, he could have invoked the power of the courts to compel his reinstatement. If we are correct in this, how was it possible for the defendant, by incorporating under the Missouri statutes, and, by changing its by-laws, to destroy the contract with Levin.

It is true, as claimed by the defendant, that, prior to the death of Levin, the beneficiaries under the certificate had no vested rights ( *Byrne v. Casey*, 8 S. W. Rep. 38; *Masonic, etc., Society v. Burkhart*, 110 Ind. 189 ), but Levin did, and he could not be deprived of them without his consent. In Niblack on Mutual Benefit Societies, this rule of law is clearly stated. In section 202, the author says: "But when a provision of the charter or a by-law of the society constitutes a part of the contract of insurance, its alteration without the consent of the member cannot affect the contract."

In the case of *Morrison v. Wisconsin, etc., Ins. Co.*, 59 Wis. 162, the defendant's by-laws, at the time the certificate was issued, provided that the loss should be paid within sixty days after notice of the death of the assured. Afterwards, the by-law was changed so as to provide, among other charges, that the loss should not be payable until ninety days after notice of the death. The company defended on the ground that the right of action did not accrue until after the expiration of the ninety days. After referring to the original by-law, the court said: "We think it indisputable that the above

provision of the charter and original by-law is a part of the contract of insurance, and cannot be changed at the will of the company, without the consent of the assured.''

In the case of *Gundlach v. Germania, etc., Ass'n*, 49 How. Pr. 190, the plaintiff was the widow of a deceased member of the association. In the original contract of insurance, the defendant agreed to pay the widow of the deceased a certain monthly allowance. After his death the company amended its by-laws so as to reduce the allowance. In treating of the power of the corporation to make the alteration in the contract, it was said : ''It must be conceded, I think, that the provision in favor of the plaintiff was in all respects binding as a contract between her husband and the association. The association undertook to pay to his widow a monthly allowance after his death, if, at the time of his death, he was a member, and had been such member for the preceding six months. After his death, it is not perceived how the association can, by adopting a new article, or by repealing the old one, relieve itself from this obligation.''

In *Folmer's Appeal*, 87 Pa. St. 133, the charter of the Penn Mutual Relief Association, of which Frederick Schwehr, deceased, was a member, contained this provision as to the payment of benefits : '' Shall be paid to his (member's) legal representatives, or to such person or persons as he may have designated in writing, either by his own hand or that of another person, by his direction or request.'' Schwehr, in his certificate, directed that the money be paid to Mrs. Folmer, the appellant. After he became a member, that provision of the charter in reference to the beneficiaries was so changed as to read : ''Shall be paid to the widow, orphans or family of the deceased.'' The trial court decided that the money belonged to a daughter of Schwehr. Mrs. Folmer appealed, and the supreme court of Pennsylvania decided that she was entitled to

the money. The court, in commenting on the effect of the subsequent amendment on Schwehr's contract of insurance, said: "It is not necessary to inquire into the effect of the amendments in the second and fifth articles of the constitution. The changes made were in some respects material, but the rights of the parties must rest on the provisions which were in force when Mr. Schwehr became a member of the association."

Our conclusion is that the reincorporation of the defendant in this state, and the change of its by-laws in conformity with its new articles of association, in no way invalidated Levin's contract of insurance.

But the defendant's counsel insist that, if all that has been said by us be conceded, yet the courts of this state will not enforce such a contract, for the reason that it is repugnant to the general policy of its laws on this subject. This objection involves a reference to the law of comity among the states.

In *Bank of Augusta v. Earl*, 13 Pet. 519, Chief Justice TANEY used the following language: "It is truly said in Story's Conflict of Laws, pages 36 and 37, that 'in the silence of any positive rule affirming or denying or restraining the operation of foreign laws, courts of justice presume the tacit adoption of them by their own government, unless they are repugnant to its policy, or prejudicial to its interest.'" It is a part of the common law that a corporation may carry on business in foreign jurisdictions, and it is under this law of comity, which is also a part of the common law, that foreign courts lend their aid to the enforcement of its contracts, provided the contract itself is not expressly prohibited by a local statute, and is not repugnant to the settled adjudications of the courts of the state, or to the general policy of its laws. The statute of this state which confines the beneficiaries in such societies to the members of the family of the member, or to some person or persons dependent upon him, has reference solely to domestic corporations. We think it would be

a wrong and improper application of the law of comity to say that, by reason of this statute, the courts of this state ought not to enforce the collection of the amount due under this certificate, on the ground that such a contract is repugnant to the general policy of the law of the state. If this contract of insurance was open to the charge that it was purely a wagering contract, then it might well be said that it would not be enforced, because it would be against the adjudications of the state, and the general law of the state.

Lastly, the defendant says that the judgment must be affirmed for the reason that the plaintiffs are the trustees of one of its subordinate lodges, and that they have not the legal capacity to accept and execute the trust imposed, and, therefore, can maintain no action for its enforcement. No authority is cited on either side of the question. The plaintiffs are only members of the corporation, and their *status* is not different from that of other members merely by reason of the fact that they are trustees of a subordinate lodge. It would certainly be permissible for an ordinary member of the defendant society to act as a trustee for a beneficiary in one of its certificates, and there would be nothing in the law prohibiting him, as such trustee, from suing his corporation to enforce the trust. It seems to us that there is no merit in this objection.

The judgment of the circuit court will be reversed, and the cause remanded. All the judges concur.