ELLEN CHADWICK, Respondent, v. THE ORDER OF THE TRIPLE ALLIANCE, Appellant.

St. Louis Court of Appeals, February 13, 1894.

1. Benefit Societies: WAIVER OF FORFEITURE: POWERS OF LOCAL SECRETARIES OF SUBORDINATE LODGES. A mutual benefit society may waive a right of forfeiture accruing to it from the nonpayment of dues by a member. But, where the secretary of one of the subordinate lodges has no power under its by-laws to waive such right of forfeiture, his course of conduct will not establish the existence of that power in the absence of evidence of previous authorization or knowledge thereof by the society.

2. ———: Forfeiture of Benefits: PLEADING AND BURDEN OF PROOF. Held, in the course of discussion, that when such a forfeiture is relied upon, it must be pleaded and proven.

3. ——: ——: EFFECT OF AMENDMENT OF LAWS OF SOCIETY. *Held,* further, in the course of discussion, that a benefit society can not by amending its laws affect the rights of a member to benefits under an existing certificate, unless the certificate was issued subject to such right of amendment.

*Appeal from the Hannibal Court of Common Pleas.*
HON. R. F. ROY, Judge.

REVERSED AND REMANDED (*Biggs, J. dissenting*)..

*Nat C. Dryden* for appellant.

(1) The defendant's by-laws expressly define the powers and duties of the officers of the grand and subordinate camps or lodges, and the obligations of the individual members to the supreme grand camp and to the other members of the order, as well as the rights of each individual member. *Mulroy v. Knights of Honor,* 28 Mo. App. 468; *Grand Lodge v. Elsin,* 26 Mo. App. 109; *Hysinger v. Supreme Lodge,* 42 Mo. App. 628; *Gray v. Supreme Lodge,* 118 Ind. 328; *Britton v. Supreme Council,* 46 N. J. Eq. 102; Bacon on Benefit Societies sec. 161, and cases cited. (2) The rule fairly deducible from all the authorities is that he has no authority to waive any of its laws which relate to the substance of a contract between an individual member and his associates in their associate capacity. Accordingly, the secretary of a subordinate camp has no authority to make such waiver. *Lyon v. Supreme Assembly,* 26 N. E. Rep. (Mass.) 236; *Brotherhood's case,* 31 Beaver, 365; *Burbank v. Association,* 144 Mass. 437; *McCoy v. Church,* 152 Mass. 272; *Baxter v. Ins. Co.,* 1 Allen, 295; *Evans v. Ins. Co.,* 9 Allen, 329; *Hale v. Ins. Co.,* 6 Gray, 169; *Brewer v. Chelsea,* 14 Gray, 203; *Mulroy v. Ins. Co.,* 2 Allen, 116; *Sweet v. Society,* 78 Maine, 541.

*W. T. Ragland, J. H. Whitecotton* and *T. H. Bacon* for respondent.

(1) The trial court erred in admitting in evidence the constitution and by-laws of 1889 and of 1891, so far as they fail to show that they were in force at the date of the certificate. In essential particulars a beneficiary contract can not be arbitrarily changed by post regulations. As neither the state nor the federal legislators could do this, neither can any supreme grand council. *Hysinger v. Supreme Lodge*, 42 Mo. App. 627; *Grand Lodge v. Sater*, 44 Mo. App. 445. (2) The decedent strictly complied with the by-laws for the payment of assessments—not merely through waiver but independently through sterling performance. *Mulroy v. Knights of Honor*, 28 Mo. App. 468; *Agnew v. United &c.*, 17 Mo. App. 254. (3) Any delinquency on decedent's part in paying dues or assessments was waived by years of the only course and conduct of business of appellants ever known to decedent.

BOND, J.—This action was brought by the widow of a deceased member of the defendant order upon two certificates issued by it in her favor. The certificates sued upon contained a provision that upon the death of the husband, "he having paid *all assessments and dues* * * * an assessment shall be made on all the surviving members," and a certain amount of the sum so raised should be paid Ellen Chadwick, his wife and the plaintiff herein.

The petition alleges the membership and death of plaintiff's husband, and proper proof given defendant that the two certificates of insurance issued to plaintiff were lost. It set out their contents, and averred that the husband of plaintiff fully complied with the terms

of said certificates of insurance issued in her favor, but that the defendant neglected and refused to make the assessments which it had agreed in said certificates to make; whereby plaintiff was damaged in the sum of $500 under each certificate.

The answer of defendant averred that, under the constitution and by-laws of said order and the requirements of the certificate sued on, the deceased member (William Chadwick) was liable to pay an assessment of fifty cents in each of the divisions wherein plaintiff's certificates were issued on all assessments for the death of such members of said divisions, as should die after the date of said certificates (Jan. 24, 1889).

The answer then set forth twelve assessments, giving dates and amounts, and averred, to-wit: "Each of which assessments said William refused and failed to pay although duly notified thereof, and was delinquent on each and all of them at the time of his death."

The answer further set up the requirement of defendant's constitution and by-laws, that the holder of certificates in its divisions 2 and 3 should, on the first of January of each year, pay the sum of fifty cents as annual dues in each of said divisions without notice; and that the husband of plaintiff was bound to pay on the first day of January, 1891, annual dues of fifty cents in each of said divisions, which he wholly failed to pay at said time or any other time, and that he was delinquent at the time of his death.

The answer then averred, to-wit: That the said constitution and by-laws provided that members so delinquent upon assessments or dues shall, *ipso facto*, be suspended from all participation in the beneficiary fund of said order, and can only be reinstated in accordance with certain rules of the order, and that said William failed to make application for reinstatement for any of said delinquencies, and became and was at the

time of his death so as aforesaid delinquent, and by reason thereof said certificates became and were null and void, and the defendant prays to be discharged.

The reply was a general denial of the new matter in the answer.

On the trial, it was admitted that plaintiff was a beneficiary in the policies described in her petition, issued by the defendant to William Chadwick, who died on the twentieth day of July, 1891, of which defendant received proper notice, and that said certificates were lost.

The evidence tended to show that the Triple Alliance is a beneficiary society, consisting of three divisions, known as 1, 2 and 3, and subdivided into various subordinate camps; that it is controlled and governed by a constitution and by-laws enacted by its *supreme grand council;* that, by virtue of its constitution and by-laws in force during the membership of respondent's husband, it was provided among other things (section 6, Constitution and By-laws of 1889) that holders of certificates in divisions 2 and 3 should pay fifty cents annual dues each year, and fifty cents assessments on a death; that notice of such assessments should be given by the secretary of the supreme grand council, and payments made by the member to the secretary of the camp to which he belonged; and further: "Should such assessments not be paid within thirty days from the time of mailing the same, then each member failing to pay shall, *ipso facto,* be suspended from all participation in said beneficiary fund. Any suspended member may, at any time within three months after suspension, be restored, etc."

Under the constitution and by-laws of defendant for 1891 it was also provided, to-wit:

Sec. 7 of by-laws provides that all members holding certificates in the beneficiary fund shall pay,

*without notice,* annual dues on the *first day of January of each year as follows*:

"In division number 2, fifty cents; in division number 3, fifty cents. And a failure to pay such annual dues shall suspend the member from all participation in the beneficiary fund during such suspension, *and shall in all respects be governed by the same laws as for failure to pay assessments.*"

Defendant's by-laws further regulated the method of sending notice of assessment by the secretary of the supreme grand council to the secretary of the subordinate camp, and by the latter to the members of the camp, liable to pay the same; and they provided for the payment to the secretary of the subordinate camp, and a report by him to the secretary of the supreme grand council, showing what members have paid, and what members have failed to pay the same, and provided that any member not paying such assessment within twenty days from the date of the notice of the assessment should be suspended from all participation in said beneficiary fund, and could only be reinstated in accordance with a provision requiring the paying up of delinquent dues or assessments, and by furnishing a certificate of good health, etc.

The evidence tended to show that on the second day of June, 1891, Mr. Tomkins, the local secretary of the subordinate camp to which Mr. Chadwick belonged, sent to the secretary of the supreme grand council $4 (less 15 cts. for collecting same) to pay Mr. Chadwick's annual dues, due Jan. 1, 1891, in divisions 2 and 3, fifty cents each, and also six assessments of fifty cents each in the two divisions of which Mr. Chadwick was a member, due and payable respectively February 1, 1891, March 1, 1891 (two of that date), April 1, 1891, and May 1, 1891 (two of that date).

On June 15, the secretary of the supreme grand

council, who had received the above remittances, wrote to the local secretary who had forwarded the same the following letter.

"HANNIBAL, Mo., June 15, 1891.

"G. W. Tomkins, Monroe City, Mo.

"DEAR SIR AND BROTHER.—In reply to your letter regarding the assessments of brother Chadwick, will say that they were not paid when due. Annual dues, which should have been paid February 1, were not paid until March 5.

"We don't want him to go to any expense, but merely to sign an application so we may know he is in good health. He, too, knows that unless he pays the assessments when due, he is suspended, and that the only way to be restored is to make satisfactory statement of good health.

"Fraternally,

"E. N. BONFILS, Sec'y."

The evidence tended to show that William Chadwick made no application for reinstatement in divisions 2 and 3 of defendant's order; that on the second day of September, 1891, the notice was received of the death of Mr. Chadwick, and thereupon the $3.85 which had been sent in as above by Mr. Tomkins was returned to him; that it was not returned sooner, because the secretary of the supreme grand council was waiting for Mr. Chadwick to make out his application for reinstatement.

The evidence tended to show that two assessments due on June 1, 1891, and an assessment due July 1, 1891, were not paid.

The evidence also tended to show that the local secretary (subordinate camp) had no power under defendant's by-laws to receive any *assessments or dues* from parties who were delinquent, except for the purpose of sending same with an application for rein-

statement as provided in the by-laws; nor was such secretary permitted to grant further time for the payment in assessments or annual dues; and that in all respects such secretary was the agent of his camp, and not the agent of the supreme grand council, in collecting said assessments or dues or any other particular.

The evidence tended to show that the local secretary of the camp at Monroe City, of which William Chadwick, deceased, was a member, antedated receipts for him for assessments due the Triple Alliance at several times; that, the membership of that camp being small, the local secretary collected two or three assessments at a time, and antedated the receipts to put the parties in good standing; that he could not tell definitely the time of these assessments, nor did he know how many receipts he antedated; that he had no authority to antedate such receipts from the secretary of the supreme grand council; that Mr. Chadwick was present when witness antedated several receipts for him (Chadwick); that the money was returned to the local secretary by Judge Bonfils (secretary of the supreme grand council), which represented receipts antedated by him; that it was the custom of witness to remit collections every two or three months; that Mr. Chadwick was just as prompt in paying assessments as other members of the local camp; that he thinks Chadwick paid the assessments for January, February and March within twenty days after he (witness) notified him (Chadwick); that he remitted the assessments collected by him for those months on the second day of July, 1891; that he generally sent annual dues with assessments; that he received notice of these assessments in due course of mail, and held back making reports for economy's sake until he could get two or three assessments; that on March 4, 1891, he made returns for January, February and March assessments of that

year; that Chadwick's name did not appear in that report, whereby the secretary of the supreme grand council became aware that he, the local secretary, had not then received any money from Chadwick on the assessments which had been made on the tenth of January, 1891, the tenth of February, 1891, and the tenth of March, 1891.

There was a verdict for plaintiff on both counts of the petition, from which defendant appealed. The principal errors complained of on this appeal relate to the giving and refusing of instructions, and the verdict under the law and evidence.

The first instruction given by the court at the instance of plaintiff, embodies the proposition, that, if the jury should believe from the evidence that defendant by *a course of conduct or practice or custom* received annual dues from the deceased and other members of his local camp after January 1, 1891, then payments so made by such decedent were a full compliance with the benefit certificates in suit.

As an abstract proposition, this direction is not subject to criticism; for, although the constitution and by-laws of the defendant constitute the contract by which its members are governed, still it is in the power of defendant to waive a compliance on the part of its members with these regulations, and such waiver by *defendant* might be evidenced by the hypothesis stated in the instruction.

Nor was the second instruction given for plaintiff, wherein the jury was told that, if they believed *defendant* was put upon inquiry as to the delinquency of the deceased and other members of his camp, and nevertheless received his payments and carried him in good standing, then such payments were a performance, incorrect as a legal proposition.

Neither of these were predicated upon the acts of

either the secretary of the supreme grand council, or the secretary of the local camp, or any other special agent of the defendant. Hence they are not obnoxious to the rule, that such subordinate officers of such associations cannot waive those requirements of its laws, which are essential elements of the contract between itself and its members. *Harvey v. Grand Lodge*, 50 Mo. App. 472.

The difficulty as to these instructions arises altogether from the narrowness of the testimony in confining the evidence of acts of the supposed waiver to the doings of the local secretary of defendant's camp. This officer clearly had no power by virtue of his agency, as set forth in the laws of defendant, to modify or annul any laws which relate to the substance of the contract created between its members. *Harvey v. Grand Lodge, supra.*

The court, however, in another instruction of its own motion gave a positive misdirection. This instruction contains the following clause:

"And the jury are further instructed that the failure of said William Chadwick to pay such assessments or annual dues will not prevent the plaintiff's recovery, if prior to said failure the defendant, through its secretary of its supreme grand council, or *through the secretary of the Monroe City camp of the defendant order*, was in the habit of receiving assessments from said Chadwick and annual dues after the same had become delinquent and unpaid."

Under this instruction the jury were warranted in finding for the plaintiff, if they believed the local secretary of the defendant's camp was in the habit of receiving assessments and dues after the same had become delinquent.

If the doctrine of waiver can be invoked against the appellant, it must rest upon a knowledge on its part

of the essential facts relied on to make out the waiver. The mere conduct or habit of the local secretary of a subordinate camp cannot, without authority from or the knowledge of the appellant, preclude it from relying upon the provisions of its constitution and by-laws. This, however, is a conclusion which the jury might have legitimately drawn from the paragraph, *supra*, of the court's instruction. The instruction, therefore, contained reversible error.

We are of the opinion also that the verdict of the jury, under the evidence in this record, can not be sustained in view of instruction number 1, given by the court for the defendant. In that instruction, the court set out the various assessments made against the decedent, and specifically embraced two made on June 1, 1891, in each of the divisions of which he was a member, and directed the jury that, if they believed those assessments were mailed to the local secretary of the camp of William Chadwick, then such mailing was notice to him, and if he did not pay such assessments or cause them to be paid within thirty days, and died delinquent, then their verdict should be for defendant as to the division or divisions in which the assessments were unpaid.

The evidence was uncontradicted that William Chadwick was notified, as prescribed in the above instruction, of the two assessments due in June, and that he neither paid nor caused them to be paid prior to his death, July 20, 1891, more than thirty days thereafter. The verdict of the jury was, therefore, on the undisputed facts in this case, contrary to this instruction, and, as the instruction stated the law correctly, that fact furnishes another ground for vacating the verdict.

In view of a retrial, we make the following suggestion touching errors committed against the

plaintiff, of which she, being the successful party, was not in a position to complain on this appeal, and the recurrence of which should be avoided.

The certificates sued upon make the plaintiff's recovery dependent upon the payment by the members of assessments and dues. It, however, does not appear in such certificates what the dues are, when payable, or that their nonpayment at a time certain worked a forfeiture.

Where a forfeiture is relied on, its conditions must be pleaded and proven. The answer seeks to plead such a forfeiture by stating that by the constitution and laws of the order certain assessments and dues were to be paid by the deceased, while a member, at certain dates, and that he failed to do so, which under such laws worked a forfeiture. The answer does not in terms state that these provisions of the constitution and laws were in force when the certificates sued on were issued, nor that the certificates were issued subject to such subsequent changes in the constitution as the society might make. Unless one or the other of these conditions existed, the certificate was not affected by subsequent changes in the constitution. *Hysinger v. Supreme Lodge,* 42 Mo. App. 627.

The issue of the certificates and the member's death were admitted upon the trial, and, as the allegations of the answer were denied by reply; the above admission made a *prima facie* right of recovery in the plaintiff. *Mulroy v. Knights,* 28 Mo. App. 468.

It appears that the defendant, upon the trial, offered in evidence copies of the constitution and by-laws of 1889 and 1891. In what shape this proof was, does not appear. Presumably it consisted of some pamphlet, purporting to contain the constitution and laws of the order. The plaintiff objected to these

on the ground that there was no proof that they were in force at the time when the deceased signed the application, and that the by-laws post-date the application. These papers do not purport to be originals, nor were they attested copies so as to make them admissible under section 4847 of the Revised Statutes of 1889.

We think the objection should have been sustained, and the defendant should have been required to introduce legal evidence that the the papers offered contained the constitution and by-laws of the order, and that the constitution of 1889 was adopted prior to the member's application, which, as above seen, was in January, 1889. If the papers had been admitted without objection, we would not be prepared to say that they contained no evidence of having been in force at the date when the application was made, as the inference is admissible from their context that they were in force during the entire year of 1889. Having been illegally admitted against plaintiff's objection, however, plaintiff can not be precluded by their contents, so as to make judgment against her in this proceeding.

In view of a retrial we also call the attention of the parties and the court to the recent decision of *Reichenbach v. Ellerbe*, 115 Mo. 588.

The judgment herein is reversed, and the cause remanded. Judge ROMBAUER concurs. Judge BIGGS dissents.