TAMAR DERRINGTON *et al.* v. C. S. CONRAD *et al.*
No. 89.

1. FRATERNAL INSURANCE—*Son-in-Law May be Designated as Beneficiary*. Where the declared object of an unincorporated fraternal insurance association is to secure a provision for the families of deceased members, but the rules adopted for its government contain no restriction upon the right to designate as beneficiary one who is not included in the particular class of persons for whose benefit the association is formed, and a son-in-law of a member is designated as a beneficiary, who thereafter pays all assessments levied against such membership, *held*, that such designation is not void as being in contravention of the public policy of this state.

2. —————*Proceedings Construed—Proper Beneficiary*. Where, in accordance with the rules of an unincorporated fraternal insurance association, a member thereof designates a person to whom the fund arising by virtue of a certificate of membership thereon shall be paid at her death; and upon a reorganization of such association a new certificate is issued in lieu of the old one, which reissue is based upon a compliance by the member with certain prescribed conditions, and the original certificate is surrendered and no new designation of a beneficiary is made; and where it is apparent that it was the intention and understanding of such member that the rights conferred and the benefits to be acquired under the new certificate were to be the same as under the original certificate: *Held*, That in a controversy between the different claimants to the fund, payment should be made to the person so expressly designated.

MEMORANDUM—Error from Saline district court; R. F. THOMPSON, judge. Action by George W. Jones, as secretary of The Odd Fellows' Funeral Benefit Association of Kansas against C. S. Conrad and others. Judgment for said Conrad. Certain defendants bring the case to this court. Affirmed. The opinion herein was filed June 4, 1896.

The statement of the case, as made by CLARK, J., is as follows:

On the 27th day of July, 1871, there existed a voluntary unincorporated fraternal insurance association under the jurisdiction of the grand lodge of the Independent Order of Odd Fellows of the state of Kansas, under the name of "The Odd Fellows' Funeral Aid and Orphans' Protective Association of Kansas," which association, upon the date mentioned, issued to Mrs. Elenor Scholl, the wife of one W. B. Scholl, an Odd Fellow of the scarlet degree, a certificate of membership of which the following is a copy:

"CERTIFICATE OF MEMBERSHIP.

"No. 509.   This is to certify that Mrs. Elenor Scholl has paid into the funds of the Odd Fellows' Funeral Aid and Orphans' Protective Association of Kansas the sum of $2.50, and is hereby acknowledged as a member thereof.   In testimony whereof, I have hereunto set my hand and affixed the seal of said association, at Leavenworth, this 27th day of July, 1871.

(SEAL.)               SAM'L F. BURDETT, Secy."

Subsequently, and prior to the year 1887, the name of this association was changed to "The Odd Fellows' Funeral Aid Association of Kansas."   At the annual communication of the grand lodge which convened on October 11, 1887, a committee, designated as the "Committee on Funeral Aid Association," presented

to that body a report which recommended the closing up of the affairs of the association, and the organization of a new one, to be known as "The Odd Fellows' Funeral Benefit Association of Kansas," that the old association should continue in existence until the first day of the following month, and that thereafter its officers should proceed to settle up all of its affairs, make any assessments necessary to meet death losses occuring prior to November 1, 1887, and, after paying all claims against the association, turn over to the trustees of the new association any and all assets remaining in their hands. This report was adopted by the requisite vote of the grand lodge and a code of by-laws was at the same time adopted for the government of the new association. These by-laws provided, among other things, that any Odd Fellow of the scarlet degree, not over 50 years of age, in good standing in his lodge, or the wife of an Odd Fellow in like standing, if not over 50 years of age, might become a member of the association upon the payment of a membership fee of $5 for a beneficiary certificate of $1,500; but that no application should be received from any person who was not in good health, or who should use intoxicating liquors to excess, and

"that members in good standing of the Odd Fellows' Funeral Aid Association of Kansas who shall, on or before the 1st day of December, 1887, surrender their certificates in said association to the secretary of this association, and shall in writing signify their acceptance of the provisions of the laws of this association, accompanied by an agreement to pay all subsequent assessments that may be made against the surrendered certificates in closing up the affairs of the Odd Fellows' Funeral Aid Association, shall have issued to them, in lieu of said certificate, one certificate of $1,500 in this association without medical examination or the payment of a membership fee: *And*

*provided further*, That this association shall not be liable upon the death of any member of said Odd Fellows' Funeral Aid Association until after the surrender as above of said certificates.''

Another section provided that the application for membership should be in the form furnished by the association, should state for whose benefit the beneficiary certificate was taken, and should contain a certificate of the medical examiner as to the good health of the applicant. Another section provided that, upon receipt of proof of death of a member of the association in good standing, the president and secretary

'' shall draw an order upon the treasurer for the sum called for by the beneficiary certificate held by the deceased, payable to such person or persons as said member may have directed while living : *Provided*, That if no such directions shall have been made, then such sum to be paid to the widow or widower : *Provided further*, That if there be no widow or widower, such sum shall be paid to the children of the deceased, share and share alike :  .   .   .   *Provided*, That said sum shall be held sacred as a legacy for such persons in the order above named, and shall not in any case be liable for or appropriated to the payment of any debts of said deceased member.''

On November 28, 1887, the new association issued to Mrs. Elenor Scholl a certificate of membership which recited that ''in consideration of the representations made in the application for membership which is made part hereof, and the sum of $5 to it in hand paid by Mrs. Elenor Scholl, and the sum to be levied (according to age at the time) upon each assessment levied as provided in the by-laws,'' the association would ''pay or cause to be paid to the heir or heirs of deceased, or as directed by the by-laws, within 40 days after the first of the month next succeeding receipt of the due and proper notice and satisfactory

evidence of the death of said Elenor Scholl, the full amount of $1,500, or so much thereof as one assessment upon the association shall produce." This certificate was signed by the president and secretary of the association, and was accepted by Mrs. Scholl by her indorsement thereon in the following words : "I accept this certificate upon the conditions herein named.—Elenor Scholl." This certificate was based upon a written instrument, of which the following is a copy :

"*To S. F. Burdett, Secretary of the Odd Fellows' Funeral Benefit Association of Kansas:* DEAR SIR AND BROTHER — I, Elenor Scholl, widow of W. B. Scholl, a scarlet degree member in good standing of Salina Lodge No. 28, I. O. O. F., and a member of the Odd Fellows' Funeral Aid Association, by certificate No. 509, No. —— and No. ——, do hereby accept the provisions of the by-laws of the Odd Fellows' Funeral Benefit Association of Kansas for my becoming a member thereof, and I hereby surrender and inclose all of my said certificates of membership in said funeral aid association, and I hereby promise and agree to pay all assessments that may be levied against my said certificates hereby surrendered for the purpose of paying all death losses that have accrued prior to October 31, 1887, in said Odd Fellows' Funeral Aid Association ; and I do further covenant and agree to comply in all respects with the laws, rules and regulations of the Odd Fellows' Funeral Benefit Association. I was born at Lacona, Harrison county, Indiana, on the 26th day of January, 1817.

ELENOR SCHOLL.

"Assigned in favor of C. S. Conrad."

Mrs. Scholl died on August 19, 1890. She was at the date of her death a widow, and left surviving her six children. Proof of death was duly furnished, and as a dispute arose as to who was entitled to the fund secured by the certificate, the association filed its peti-

tion in the district court of Saline county, making all
claimants to the fund parties defendant, and deposited
in court the full sum of $1,500, to be disposed of as
the court might afterward direct. A trial was had
before the court on the issues joined between C. S.
Conrad and his codefendants. Conrad was the son-
in-law of Mrs. Scholl, and he and his wife claim that
during her lifetime Mrs. Scholl designated him as the
beneficiary to receive the amount due upon her cer-
tificate. All the other defendants were the surviving
children of Mrs. Scholl, and as such claimed their
proportionate share of the fund, under the by-laws of
the association. The court found in favor of Conrad,
and judgment was thereafter rendered that he recover
the full sum of $1,500 so deposited in court, and the
defeated claimants have brought the case to this court
for a review of that judgment.

*J. B. Hutchinson, C. W. Banks,* and *Joseph Moore,* for
plaintiffs in error.

*Burch & Burch,* and *Bond & Osborn,* for defendant in
error C. S. Conrad.

The opinion of the court was delivered by

CLARK, J. : The plaintiffs in error contend that the
legislation of the grand lodge in 1889 resulted in the
dissolution of the aid association, and the organiza-
tion of a new association entirely independent of the
former, and that any rights accruing by virtue of
membership therein should be measured solely by the
laws then adopted for its government, and that, al-
though Mrs. Scholl might, by complying with certain
prescribed conditions, become a member of the benefit
association, any directions made by her under the
certificate in the aid association would be of no valid-

ity after the issuance in her favor of a new certificate in the benefit association; and that while she might at the time of making her application for membership, or at any subsequent period, while living, have designated a person to whom the fund arising by virtue of such membership should be paid, as no such designation was made, under the by-laws of the association the fund should be paid to her children; and further, that even though Mrs. Scholl had in her lifetime directed that the fund should be paid to C. S. Conrad, such designation would be of no avail, as he did not belong to the particular class of persons for whose benefit the association was formed, and had no insurable interest in the life of Mrs. Scholl.

We think from an examination of the record that no formal application for membership in the benefit association was required of Mrs. Scholl, as at the time of the issuance of her certificate she held a valid certificate of membership in the aid association, which, in conformity to the requirements of the by-laws, she surrendered to the secretary, and at the same time signified in writing her acceptance of the provisions of the laws governing the benefit association, and accompanied the same by an agreement to pay all subsequent assessments that might be made against the surrendered certificate. This seems to have been all that was necessary to be done in order to entitle her to a new certificate which, as provided in the by-laws, was to be issued "in lieu of the surrendered certificate," and we are of the opinion that the legislation of the grand lodge above referred to, so far as it concerned members of the aid association who might desire certificates in the benefit association, and who should comply with the by-laws then adopted governing the issuance of certificates to such members,

amounted only to a reorganization under a new name of the then existing association, and that when the benefit association issued its certificate to Mrs. Scholl it adopted entire her status in the aid association, and as she was not required under the by-laws to designate a beneficiary, any directions which she may have given before the surrender of her former certificate should be given full force and effect, in the absence of a clear showing of an intention to change the beneficiary.

The written acceptance by Mrs. Scholl of the provisions of the by-laws of the benefit association, and her agreement to pay all assessments that might be levied against her certificate in the aid association, which was attached thereto, and which appears to have formed the basis for the issuance of the certificate of membership in the benefit association, had noted thereon the words "assigned in favor of C. S. Conrad." and the evidence shows that these words were on that document when it was executed. Mr. Bishop testified that Mrs. Scholl executed an assignment of her certificate in 1885, about two weeks prior to the death of her husband, and that he forwarded it to the secretary. The register of members of the aid association which was turned over to and formed a part of the records of the benefit association had noted therein that the beneficiary fund under Mrs. Scholl's certificate was to be paid to "son-in-law, C. S. Conrad." This and the written acceptance and agreement above mentioned constitute the entire record in the office of the association of any directions having been given by Mrs. Scholl that the beneficiary fund due under her certificate should be paid to any particular person. An objection is interposed by the plaintiffs in error to the consideration of this entry in

the register of members from the fact that the words "son-in-law, C. S. Conrad" are written in pencil, while all other entries on that particular page, save one, are written in ink. The other entry referred to is a similar one opposite the name of the husband of Mrs. Scholl, whose certificate was paid to C. S. Conrad. We think the record of the entries on the register of members above referred to was properly admitted in evidence in support of the contention of the defendants in error that Mrs. Scholl had in her lifetime directed the association to pay the amount of her certificate to Conrad, and that that entry was competent evidence of such direction.

While the certificate was by its terms made payable "to the heir or heirs of deceased, or as directed by the by-laws," there is nothing in the record to indicate that Mrs. Scholl desired that her heirs, as such, should be the beneficiaries, unless, as claimed by the plaintiffs in error, her written acceptance upon the certificate itself should be construed as an acquiesence on her part in the designation thus made by the association. The document which served as an application for membership, and which is referred to in the certificate as forming a part thereof, contained no such direction, but, on the other hand, it contained upon its face a notation that, in our opinion, amounted to a statement that the certificate was being taken out for the benefit of C. S. Conrad, and, as the by-laws provided that the sum called for by the certificate should be paid to such person or persons as the member may have directed while living, we think the acceptance of the certificate, as written by the association, ought not to be construed as an intention on the part of the member to change the beneficiary, but that, as the words "to the heirs of the deceased or"

were inserted in the certificate without authority, any former directions given by her with reference to the payment should be held to govern as to the disposition of the fund. And it is evident from the statements made to Mr. Bishop by Mrs. Scholl, after the issuance to her by the benefit association of the $1,500 certificate, that such was her understanding and desire. The record shows that Mrs. Scholl delivered her certificate of membership in the aid association to Conrad in May, 1885; that the latter held it until it was surrendered to the benefit association and the new certificate was issued, in 1887; that soon thereafter Mrs. Scholl delivered to him the new certificate, which he held until the time of her death; that notices of assessments were sent to him by the secretary of the association, and that he paid all assessments levied against both certificates during all the time the latter were in his possession. We think there is sufficient competent evidence in the record to sustain the finding of the trial court that Mrs. Scholl in her lifetime directed that the proceeds of her certificate of membership should be paid to C. S. Conrad.

This leaves but one further question for our determination: Are the parties to this action bound by the directions given to the association by Mrs. Scholl? The statutes of this state provide that persons may associate themselves together for the purpose of forming a mutual life association for the protection and relief of each other and for the payment of stipulated sums of money to the widows, orphans, heirs or relatives by consanguinity or affinity of the deceased members thereof. (Gen. Stat. 1889, ¶ 3450.) What the lawmaking power of the state declares may be lawfully done cannot be said to be contrary to public policy; and as a member of an association which is

organized under the general law of the state may designate a relative by affinity as a beneficiary, we think the same rule should apply to members of an unincorporated fraternal association.   While the declared object of the benefit association was to "secure a provision for the families of deceased Odd Fellows," this is only the statement of the general purpose, which is no doubt accomplished in most cases.   But we find no restriction in the by-laws upon the right of a member to designate as beneficiary one who is not a member of the family of the deceased Odd Fellow.   If it had been intended that no one who did not belong to a particular class of persons could be named as beneficiary, it is evident the by-laws would have so declared ; but for aught that appears in this record the declared object of the association may be as fully accomplished by designating Conrad as the beneficiary, he being the husband of one of the children of the deceased Odd Fellow, W. B. Scholl, as would have resulted had Mrs. Conrad been named, or had no directions been given and the fund had been distributed equally among the surviving children of Mrs. Scholl.   It is at least more than probable that Mrs. Conrad will derive some benefit from the payment of the fund to her husband ; but at any rate we are clearly of the opinion that, as the absolute right was given to Mrs. Scholl to designate whomever she desired as beneficiary, and as she did name one who under the statute had an insurable interest in her life, such direction cannot be disregarded and the fund paid to some one else. (*Highland v. Highland,* 109 Ill. 366 ; *Supreme Lodge v. Martin,* 12 Ins. L. J. 628 ; *Gentry v. Supreme Lodge,* 23 Fed. Rep. 718 ; *Brown v. Brown,* 27 N. Y. Sup. 129 ; *Mitchell v. Grand Lodge,*

C. B. & Q. Rld. Co. v. Guild.

70 Iowa, 360 ; *Walter v. O. F. Mut. Ben. Soc.*, 44 N. W. Rep. 57 ; *Maneely v. K. of B.*, 115 Pa. St. 305.)

After a careful examination of the record and the authorities, we have reached the conclusion that the judgment should be affirmed, and it is so ordered.

GILKESON, P. J., concurring.

GARVER, J., not sitting, having been of counsel.