Christina L. Belknap, As Executrix of the Estate of James Belknap, Deceased, Appellant, v. Ellen C. Johnston, Appellee.

114 265
118 286

Insurance for Creditor: NOT WAGERING CONTRACT. Insurance of his
1 life by a debtor in favor of his creditor does not constitute a
2 wagering contract, since the creditor has an insurable interest
in the debtor's life.

CONTRACT TO PAY ASSESSMENTS: *Beneficiaries.* A debtor assigned an insurance policy to his creditor, who delivered the debtor's notes in escrow to be cancelled on collecting the proceeds of the policy. The creditor meanwhile was to pay all assessments. ·The assigment was subsequently discovered to be invalid under the law of the insurance society and of the state wherein the assignment was made. A new certificate was then issued under the laws of the society, making the creditor a beneficiary. The old policy was cancelled. The evidence shows that the debtor thereafter paid the assessments, and did not insist on the creditor's payment thereof under the contract of assignment. *Held,* that the creditor's failure to pay the assessment was not, of itself, sufficient to defeat her claim as beneficiary under the policy.

CHANGE OF BENEFICIARY. Where a member of a mutual benefit society surrendered his policy therein, and obtained in its stead a new one in favor of a creditor, the transaction amounted to a change of his beneficiary, and was not a mere assignment prohibited by Acts Twenty-first General Assembly, chapter 65, section 7, making void assignments of mutual benefit insurance policies.

ASSIGNMENTS: *Lex loci.* A mutual benefit society of Illinois issued a policy on the life of a citizen of Iowa. By the laws of the society and of Illinois, a member could change his beneficiary at will on obtaining the society's consent thereto. The insured surrendered his policy to the society, and obtained a new policy in favor of the creditor. This change was made at the home office of the company. Such transaction was not prohibited by the laws of Iowa, where the original policy was issued. At the time the substituted policy was issued, Acts Twenty-first General Assembly, chapter 65, section 7, was in force, providing that no mutual benefit association operating under the act should issue a policy unless the beneficiary be husband, wife, relative, legal representative, heir, or legatee of such insured member, that assignments of the policies should be void, and that the members might at will change their beneficiaries. Section 20 provides that, "This act shall not relieve any association now doing business in this state from fulfillment of any contract heretofore entered into with its members under its certificate of membership." Between the dates of the original and substituted policies the association obtained a license to do business in Iowa. *Held,* that the creditor could recover under the substituted policy, since this was an Illinois contract, which could not be affected by laws of a foreign state subsequently enacted, though the company had become amenable by obtaining a license from such state.

*Appeal from Delaware District Court.*—HON. FRANKLIN C. PLATT, Judge.

MONDAY, MAY 27, 1901.

THIS is a controversy over the avails of a certificate of membership in the Northwestern Masonic Aid Association, a corporation doing business in the state of Illinois, issued to J. L. Belknap, and payable originally to his devisees or heirs at law. Plaintiff seeks to recover the indemnity as legal representative of the deceased, and defendant claims title thereto as beneficiary, under a substituted certificate, as a creditor of the member. The trial court dismissed plaintiff's petition, and she appeals.—*Affirmed.*

*Yoran, Arnold & Yoran* and *Warner & Lemon* for appellant.

*Dunham, Norris & Stiles* and *Bronson & Carr* for appellee.

DEEMER, J.—June 30, 1880, J. L. Belknap, a resident of this state, became a member of the Northwestern Masonic Aid Association. His devisee or heirs at law were named as beneficiaries. Thereafter he devised the avails of the certificate to J. F. Johnston. On June 20, 1883, another and additional certificate was issued to Belknap by said association, the beneficiaries being the same as in the first certificate. He also devised one-half of the avails of this certificate, which bore the number 8,585, to Johnston. Soon thereafter Johnston died, and defendant, Ellen C. Johnston, became possessed of his estate, including some notes held against Belknap, amounting to about $7,000. Efforts to adjust this indebtedness resulted in an agreement for an assignment by Belknap of certificate No. 8,585 to Mrs. Johnston as security for the indebtedness. As the articles of incorporation and by-laws of the associa-

tion forbade such an assignment, but permitted the cancellation of the certificate and the issuance of a new one, making the creditor a beneficiary, that plan was adopted, and it was agreed that upon the death of Belknap and the payment of the certificate the indebtedness should be canceled. Thereupon a new certificate, No. 60,514, was issued in which defendant was named as beneficiary. It was agreed that defendant should pay the assessments on the new certificate, but Belknap in fact paid them uptil his death. By the laws of the state of Illinois and the organic laws of the association, this change of the beneficiaries was authorized. When the original certificate, 8,585, was issued, there was nothing either in the laws of this state or of Illinois forbidding the transaction in question; but when the new certificate, No. 60,514, was issued, chapter 65 of the Acts of the Twenty-first General Assembly was in force. Belknap died in the year 1898, and the association paid the amount of his certificates into court, and was released from all liability.

The controversy, as will be observed, is between Mrs. Belknap, executrix, legal representative of the deceased, who claims under the original certificate, and defendant, Mrs. Johnston, who claims as beneficiary under the substituted certificate. Plaintiff contends that the designation of defendant as beneficiary was null and void, under chapter 65, Acts Twenty-first General Assembly; that the contract with defendant was a wagering contract, she having no insurable interest in the life of Belknap; that Mrs. Johnston failed to pay the assessments as agreed, and has forfeited her rights in and to the substituted policy; and that the designation of defendant as a beneficiary was obtained by fraud and undue influence, and by reason of criminal relations between her and Belknap. These are the issues between the parties, and, before going to the vital points in controversy, it seems proper to dispose of the minor propositions.

The evidence does not sustain the claim of fraud and undue influence, and that issue may be considered out of

the case. Mrs. Johnston was a creditor of Belknap, and, as such, had an insurable interest in his life. *Hume v. Bank,* 128 U. S. 204 (9 Sup. Ct. Rep. 41, 32 L. Ed: 370); *Morrell v. Insurance Co.,* 10 Cush: 282; *Hale v. Investment Co.,* 65 Minn. 548 (68 N. W. Rep. 182); *Goodwin v. Insurance Co.,* 73 N. Y. 479; *Levy v. Taylor,* 66 Tex. 652 (1 S. W. Rep. 900). Moreover, it is now generally held that where the insured contracts directly with the insurer, paying the premiums himself, he may designate as beneficiary one who is totally without an insurable interest in his life. *Mitchell v. Lodge,* 70 Iowa, 360; *Olmstead v. Keyes,* 85 N. Y. 594; *Association v. Blue,* 120 Ill. 121 (11 N. E. Rep. 331). It matters not, so for as this point is concerned, whether the insured or the beneficiary paid the assessments on the certificate of membership. *Johnson v. Van Epps,* 110 Ill. 551. It may be that if the beneficiary had no insurable interest, and was to pay the premiums, the policy would be null and void as a wagering contract, *Warnock v. Davis,* 104 U. S. 775 (26 L. E. Ed. 924), although there are authorities to the contrary. But we need not dwell on this point, for it is clear that defendant had an insurable interest in the life of Belknap.

The agreement for an assignment of policy No. 8,585 was reduced to writing, and signed by the parties. Among other things, it assigned the policy to defendant in consideration of the surrender and release of the obligations held by her and her deceased husband against Belknap, and defendant "assumed the right and obligation to keep up all assessments on the policy, and a failure to keep and maintain the agreement" was to work a forfeiture of all rights under the assignment. It was further agreed that Belknap's notes should be surrendered to one Haeberle, and held in escrow by him, to be delivered to Belknap's widow when the policy was paid to the defendant. When it was discovered that this assignment was invalid under the Illinois law, it was practically abandoned, and Belknap himself paid all assessments

on policy No. 60,514. There was no assignment of policy No. 8,585, unless what was done thereafter amounted to an assignment. But, whether there was an assignment or not, defendant's failure to pay the assessment should not in our opinion, of itsself, defeat her claim as beneficiary in the policy. In any event, the evidence clearly discloses a waiver by Belknap of his right to insist on that part of the contract obligating defendant to pay the assessments. We need not set out the facts on which we base our conclusions. It is sufficient to say there is no dispute in the evidence on this point. Belknap was endeavoring to pay his obligation on the Johnston notes, to save the insurance, and paid the assessments voluntarily, pursuant to a subsequent oral arrangement between himself and the beneficiary.

Having disposed of some of the minor points in the case, we now come to the more important, difficult, and controlling features. It is practically conceded that the original certificate, No. 8,585, was an Illinois contract, and that there was nothing in the charter of the association or the laws of the state forbidding the making of a creditor a beneficiary. It is also conceded that at the time the certificate issued there was no law of this state that forbade the making of a creditor a beneficiary. At the time of its issuance the member had the right to make such designation of beneficiary as he saw fit. The new certificate, No. 60,514, was issued as a substitute for the original, and provided that it should rest on the same considerations, agreements, and warranties as the one surrendered, and that all existing advantages resulting from duration of previous membership be retained by Belknap. The new certificate was issued in Illinois, at the request of one acting for Belknap, and was sent to Haeberle at the request of both Belknap and Mrs. Johnston. Haeberle was not an agent of the association, and no agent of the company had power to issue certificates. Haeberle was to deliver the policy to Mrs.

Johnston when she surrendered her notes to him, but this was no concern of the company, and was not exacted by it. The benefit was made payable in Illinois, and the assessments were also payable at the office of the company. The written assignment of the policy was, of course, executed in this state, and we may concede was void, both under our law and the charter of the corporation. Chapter 65 of the Acts of the Twenty-first General Assembly is for the regulation of mutual benefit associations. Sections 1-4, 8, 12, and 16 of that act clearly refer to domestic societies, and sections 13, 14 and 17 just as clearly refer to foreign benefit societies. The material part of section 7 reads as follows: "No corporation or association organized or operating under this act shall issue any certificate of membership or policy * * * unless the beneficiary * * * shall be the husband, wife, relative, legal representative, heir, or legatee of such insured member. Nor shall any such certificate be assigned, * * * and any certificate issued or assignment made in violation of this section shall be void. * * * Any member of any corporation, association or society operating under this act, shall have the right at any time, without the consent of such corporation," etc., "to make a change in his beneficiary, without requiring the consent of such beneficiary." Section 20 of the act contains this provision: "This act shall not relieve any corporation or assessment association now doing business in the state, from the fulfillment of any contract heretofore entered into with its members under its certificate of membership." There is no doubt that by the act in question the legislature undertook to control, in so far as it had authority to do so, the operation of mutual benefit societies doing business in this state. Section 7 in express terms refers to associations organized or operating under the act, and the act assumes to regulate the business of both domestic and foreign companies. Aside from the constitutional question, it is clear that, in so far as it relates to the assignment of certificates, it is binding

on all the interested parties; for they were all residents of this state, and made their contract of assignment within its jurisdiction. But it is equally clear that the legislature had no power over business done in another state and jurisdiction. Contracts lawful in the state where executed will be recognized and enforced in this state, unless public policy intervenes, and prevents the recognition or enforcement thereof. But, as a general rule, the legality of a contract is to be determined by the *lex loci contractus*. *Hysinger v. Lodge*, 42 Mo. App. 627; *Legion of Honor v. Perry*, 140 Mass. 580 (5 N. E. Rep. 634); *Knights of Honor v. Nairn*, 60 Mich 44 (26 N. W. Rep. 826).

We have observed that the assignment of the policy was abandoned by the parties interested. Belknap, instead of assigning the policy, exercised the power of designation given him by law, and by the articles of incorporation and by-laws of the association, and made a change of beneficiary, as he had the right to do, unless inhibited by section 7 of the Acts of the Twenty-first General Assembly. This change could not be made without the assent and approval of the association, and that was given at its home office, in the state of Illinois. Nothing remained to be done except the delivery of the substituted policy, and that was done by depositing it in the mails, addressed to Haeberle. It was sent to Haeberle, not as an agent of the company, but as an agent for the parties interested. Nothing remained to be done after the policy was mailed in the state of Illinois. No premiums were to be paid, no countersigning of the certificate to be made, nothing but delivery of the notes to Haeberle, and that was a matter in which the assurer had no interest, and with which it was in no manner concerned. The original certificate was clearly an Illinois contract, and the change of beneficiary was also made and completed in that state. Surely, we must look primarily to the laws of that state to determine the validity of the change of beneficiary. True, the company was authorized and licensed to do business in

this state, and as to all business done here it would no doubt be amenable to our laws. *Teachout v. Railway Co.,* 75 Iowa, 722; *Hartford Fire Ins. Co. v. Raymond,* 70 Mich. 485 (38 N. W. Rep. 474).

But appellant contends that as the association was licensed to do business in this state, in accordance with the laws of chapter 65 of the Acts of the Twenty-first General Assembly, at the time the change of beneficiary was made, it could not make a change of beneficiary contrary to that law, although all the business relating thereto was done in the state of Illinois; and reliance is placed on *Seamans v. Zimmerman,* 91 Iowa, 363. As we view the case, there is no necessity for deciding this question. At the time the act in question was passed, the association had already issued a certificate to Belknap, and thereunder, he had the absolute right to change beneficiaries, and could make his creditor a beneficiary if he saw fit. Without obtaining permission to do business in this state under chapter 65 of the Acts of the Twenty-first General Assembly, the association was obliged to recognize Belknap's power of appointment, and could make a substitution of beneficiaries in compliance with the terms of its original contract, without being authorized to do business in this state. *Clay Fire & Marine Ins. Co. v. Huron Salt & Lumber Mfg. Co.,* 31 Mich. 346. Obtaining permission to do business under the chapter referred to in no manner affected its rights, duties, and obligations under contracts executed before that law went into effect. Moreover, the right to appoint a beneficiary, or to make a change therein, existed at the time the contract was entered into, and we think this was an important part of the agreement, which could not be changed by subsequent legislation of a foreign state without impairing the obligations thereof. Had the association been organized under the laws of this state, the legislature, in virtue of its reserved powers, might perhaps have passed an act retroactive in character that would have been valid. This is

VOL. 114 Ia—18

what is held in *Lodge v. McKinstry,* 67 Mo. App. 82, relied on by appellant. While the beneficiary, before the death of the member, has no property interest, the right of the member himself to change beneficiaries, in accordance with the terms of his original contract, is a valuable one, that courts will at all times recognize and protect. The right to pay assessments, and to designate the person to take the benefit, is regarded as a species of property, and the legislature of a foreign state has no right to deprive the member of it. Bacon, Benefit Societies, section 237; *Hysinger v. Lodge,* 42 Mo. App. 627; *Voight v. Kersten,* 164 Ill. Sup. 314 (45 N. E. Rep. 543); *Moore v. Society,* 178 Ill. Sup. 202 (52 N. E. Rep. 882); *Folmer's Appeal,* 87 Pa. 133; *Delaney v. Delaney.* 175 Ill. Sup. 187 (51 N. E. Rep. 961). *Crocker v. Hogin,* 103 Iowa, 243, contains nothing adverse to this holding. The association issuing the certificate in that case was a domestic institution, and the articles of incorporation in force when the original certificate was issued prohibited the assignment of certificates in payment of, or as security for, any debt. The contract was valid when entered into, the corporation is foreign, and the designation of the beneficiary was in accordance with the charter and the laws of the state where the certificate was issued. There seems to be no valid reason for not enforcing it. *Association v. Rainbolt,* 48 Neb. 434 (67 N. W. Rep. 493), and *Hysinger Case, supra.*

Appellant also contends that the change of beneficiary was nothing more than an assignment, and therefore prohibited by law. Our conclusions on the other branch of the case renders a decision of this point perhaps unnecessary. But that there is a marked distinction, when applied to mutual benefit societies, seems to be well settled. Niblack, Benefit Societies and Accident Insurance, section 192; *Carpenter v. Knapp,* 101 Iowa, 729; *Society v. Fietsam,* 97 Ill. 474; *Highland v. Highland,* 109 Ill. 366; *Shuman v. Supreme Lodge* 110 Iowa, 480. That there must be a distinc-

tion, as applied to the facts of this case, is clear.    The member may change his beneficiary at pleasure, and without the knowledge or consent of either the old or the new appointee. An assignment is a matter of contract between the parties, and requires the consent of both.    In the absence of restrictions in the articles of incorporation or by-laws, the society has nothing to do with the assignment.    Not so with a change of beneficiary, such as was made in this case.    Here it must consent, and the beneficiary has nothing to do with the change.

Counsel also discuss the question of comity.    We do not regard that feature of the case as of any importance, in view of the conclusions heretofore reached.    But see *Hysinger's Case, supra.*    It is sufficient to say that neither the law of this state or the law of Illinios prohibited the change of beneficiaries made in this case.    Although not exactly in point, see, as sustaining our views, *United Order of Golden Cross v. Merrick,* 165 Mass. 421 (43 N. E. Rep. 127); *Bingham's Appeal,* 64 Pa. 345; *Dishong v. Association,* 92 Iowa, 163. Our conclusion is that defendant is entitled to the avails of the certificate, and the decree is therefore AFFIRMED.