.JENNIE M. WALLACE *vs*. UNITED ORDER OF THE GOLDEN CROSS.

Sagadahoc.     Opinion June 5, 1919.

*Insurance contracts.  General rule as to the beneficiary having a vested interest in*
*same.  Rule as to constitution and by-laws of a fraternal beneficiary asso-*
*ciation being part of the contract.  Right of association to change*
*its by-laws so as to affect the rights of person already*
*insured.  General rule in respect to liability*
*of insurance companies where the*
*insured has committed*
*suicide.*

The constitution and by-laws of a fraternal beneficiary association, in respect to
which the beneficiary contract of insurance was entered into, so far as applica-
ble, form a part of the contract itself.

Where the by-laws of a fraternal beneficiary association provide that the mem-
ber may, in accordance with such by-laws, change the beneficiary named in
the benefit certificate without the latter's consent, the beneficiary has no
vested interest either in the certificate or the money to be paid under it.  Such
beneficiary has during the lifetime of the member, a mere expectancy; this
expectancy is not property.

When in an action by the widow of a member to recover the amount of the death
benefit named in the benefit certificate expressly made payable to her, it
appears that the member committed suicide, but the case is silent as to his
sanity or insanity at the time, the presumption of sanity must be entertained,
and for the purposes of the case, the member must be considered as sane at
the time of his suicide.

Where the by-laws in force when the original benefit certificate was issued, con-
tained the following provisions only relating to suicide of a member, viz:
"No benefit shall be paid on account of the death of any member who within
three years next after becoming a beneficiary member voluntarily takes his
own life, and, provided further, that any member who within three years
after changing his Benefit Certificate from a lower to a higher rate, voluntarily
takes his own life, shall thereby forfeit all right to participate in the Benefit
Fund beyond the amount named in the Benefit Certificate issued for such
lower rate;" and later the by-laws were duly amended by providing "that
after three years from the date of initiation or transfer to a higher rate, death
by suicide, whether the member be sane or insane, and whether the act be
voluntary or involuntary, shall constitute a hazard not assumed under the

ordinary condition of the certificate of membership and the constitution and General Laws; but in all such cases the liability of the Order shall be limited to an amount equal to the total of the sums paid into the benefit fund by any such member; but in no case shall the sum so paid exceed the amount named in the benefit certificate;" it is held that it was undoubtedly the intention of the members of the order in adopting the amendment, that it should apply to the existing as well as future membership, and to certificates of membership then outstanding as well as those thereafter issued; it did not apply to death claims then pending.

When, in an action by the widow of a member upon a benefit certificate expressly made payable to her, issued when such original by-law was in force "and upon condition that the said Member complies in the future with the laws, rules and regulations now governing the said Commandery and Fund, or that may hereafter be enacted by the Supreme Commandery to govern said Commandery and Fund,"—it appears that the by-laws further provide that the member may in accordance with such by-laws, change the beneficiary named in the benefit certificate without the latter's consent, and it further appears that the member committed suicide when sane after three years from date of becoming a member, and after such amendment to the by-laws became effective, it is held that the plaintiff did not obtain a vested interest in the certificate in question at the time the same was issued or in the money to be paid thereon, which could not be defeated by a change in the terms upon which the death benefit should be payable, made in accordance with the constitution and by-laws of the Order, although without her actual knowledge and consent; that she had during the lifetime of her husband a mere expectancy dependent upon the terms of the contract existing at the time of his death and that the amended by-law is applicable to the certificate in suit.

Action of assumpsit upon a policy of insurance issued by defendant company, in which policy plaintiff was named as beneficiary. By agreement of parties case was reported to Law Court upon certain agreed statements and stipulations.

Judgment in accordance with opinion.

Case stated in opinion.

*Walter S. Glidden,* for plaintiff.

*Wilbur H. Powers,* of Boston, Mass., for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

MORRILL, J.  The defendant is a fraternal beneficiary organization, having its principal place of business at Knoxville, in the State of Tennessee, and having subordinate lodges, or commanderies,

in this State. On or before the twenty-seventh day of November, 1906, one Charles E. Wallace became a member of a subordinate commandery located at Bath, Maine, and a benefit certificate was issued to him by the defendant, bearing that date. This certificate was issued, as stated therein, "upon evidence received from said commandery that he is a contributor to the Benefit Fund of this Order . . . . and upon condition that the said Member complies in the future with the laws, rules and regulations now governing the said Commandery and Fund, or that may hereafter be enacted by the Supreme Commandery to govern said Commandery and Fund." These conditions being complied with the defendant promised and bound itself to pay out of its Benefit Fund to the plaintiff, Jennie M. Wallace, wife of said Charles E. Wallace, "in accordance with and under the provisions of the law governing said Benefit Fund, and upon satisfactory evidence of the death of said member, and upon surrender of this certificate, the sum of One Thousand Dollars, . . . . provided that said member is in good standing in this order at the time of his death; that this certificate shall not have been surrendered by said member and another certificate issued at his request, in accordance with the laws of this Order." Charles E. Wallace signed an acceptance of the certificate upon the conditions named therein.

The benefit certificate was held by said Charles E. Wallace, without surrender or change, until the date of his death. He committed suicide by hanging July 23, 1917; the case is silent as to whether he was sane or insane at the time of suicide.

Except so far as his membership status and the rights of his beneficiary, the plaintiff, may have been affected by the act of suicide, it is agreed that he was in good standing in the defendant Order at the time of his death, that he had complied with all its laws, rules and regulations, and that satisfactory proofs of death were furnished to the defendant Order. In short, neither party raises any formal or material objection as to any act or omission of either the plaintiff, the defendant or the deceased Charles E. Wallace, under the terms of the Benefit Certificate or under the laws, rules and regulations of the defendant Order, except on the one question of Charles E. Wallace's suicide, and its effect, under the facts here stated, upon the legal rights of the plaintiff, under the said Benefit Certificate.

It is familiar law that the constitution and by-laws of a fraternal beneficiary association, in respect to which the beneficiary contract of insurance was entered into, so far as applicable, form a part of the contract itself. *Grand Lodge, A. O. U. W.*, v. *Edwards*, 111 Maine, 359. *Same* v. *Conner*, 116 Maine, 224.

The case as reported does not show any provision of the by-laws in force when the certificate was issued, relating to suicide; but we have been furnished with a printed pamphlet purporting to contain the Charter, Constitution and General Laws of the Order, from which it appears that when the certificate was issued, the by-laws contained the following, and only the following provision relating to suicide of a member, viz:

"No benefit shall be paid on account of the death of any member who within three years next after becoming a beneficiary member voluntarily takes his own life, and, provided further, that any member who within three years after changing his Benefit Certificate from a lower to a higher rate voluntarily takes his own life, shall thereby forfeit all right to participate in the Benefit Fund beyond the amount named in the Benefit Certificate issued for such lower rate."

In May, 1917, the by-laws were amended by providing "that after three years from the date of initiation or transfer to a higher rate, death by suicide, whether the member be sane or insane, and whether the act be voluntary or involuntary, shall constitute a hazard not assumed under the ordinary condition of the certificate of membership and the Constitution and General Laws; but in all such cases the liability of the Order shall be limited to an amount equal to the total of the sums paid into the benefit fund by any such member; but in no case shall the sum so paid exceed the amount named in the benefit certificate."  This amendment became effective July 1, 1917.

Under this provision the defendant claims that its liability is limited to $223.73; the plaintiff claims that the amendment is not applicable in this case and that she is entitled to recover $1000.

The case has been exhaustively argued by counsel for both parties, and the broad question of the effect of subsequent amendments of the by-laws upon existing beneficiary membership has been fully presented.  We are not called upon to consider the effect upon the contract of insurance, of suicide while insane, or involuntary suicide,

either under the original by-laws, or under the amendment. The case finds that Charles E. Wallace "committed suicide by hanging," but is silent as to his sanity or insanity at the time, whether the act was voluntary or involuntary. The presumption of sanity must be entertained in the absence of proof, and where the record is silent. This presumption is not overthrown by the act of committing suicide. · Suicide may be used as evidence of insanity, but standing alone, it is insufficient to establish it. Insanity cannot be predicated simply upon the act of self destruction, for human experience has shown that sane men have taken their own lives. *Ritter* v. *Insurance Co.*, 169 U. S., 139; 42 Law Ed., 693. *Shipman* v. *Protected Home Circle*, 174 N. Y., 398, 405. We understand that the plaintiff's counsel concedes that such is the law, and that for the purposes of this case Charles E. Wallace must be considered as sane·at the time of his suicide.

Nor·are we considering the effect of the amendment upon any rights of Wallace, or upon the rights of his legal representatives, seeking to recover the amount of the benefit provided in the contract. In the instant case the death benefit was payable to the plaintiff; she takes the insurance money, if at all, directly by the terms of the contract and not derivatively, as in the capacity of heir or legal representative of the member. In the view which we take of the case it is not material whether the policy is to be construed as silent in relation to· suicide occurring after three years following the date when Wallace became a beneficiary member, or as assuming, by implication, the hazard of suicide after said three years, as claimed by plaintiff's counsel.

It was undoubtedly the intention of the members of the Order in adopting this amendment, that it should apply to the existing as well as future membership, and to certificates of membership then outstanding as well as those thereafter issued; it could not apply to death claims then pending; but it must have been intended to apply to future claims for death benefits, upon certificates issued to present as well as future members; its language clearly so indicates, and a more limited construction would thwart in large measure the object of the Order in its adoption.

It seems to be settled by the great weight of authority that Mrs. Wallace did not take a vested interest at the time the certficate was issued, either in the certificate itself or in the money to be paid

under it, of which she could not be deprived by any change of beneficiary or in terms of payment, made in accordance with the constitution and by-laws of the Order, although without her actual knowledge or consent.

In certain cases upon ordinary life insurance policies taken out by the insured for the benefit of third persons, it has been held that while the beneficiary would be bound by the representations of the insured or any fraud he may have committed in taking out the policy, the policy having been obtained through his agency, yet the beneficiary is not bound by any acts or declarations done or made by him after the issue of the policy unless such acts were in violation of some condition of the policy; and under such circumstances it is held—the policy being silent as to suicide—that intentional self-destruction, while sane, is not a defense to an action on the policy. *Fitch* v. *Amer. Popular Life Ins. Co.*, 59 N. Y., 557; 17 Am. Rep., 372, 383. *Morris* v. *State Mut. Life Ass. Co.*, 183 Pa., 563. *Seiler* v. *Economic Life Association*, 105 Iowa, 87. *Contra, Hopkins* v. *Northwestern Life Ass. Co.*, (U. S. Dist. Ct.), 94 Fed., 729; and it has been questioned elsewhere whether some of the cases have not gone too far in holding ordinary life insurance companies liable to beneficiaries for death by suicide when the policy was silent on that subject. *Davis* v. *Royal Arcanum*, 195 Mass., 402, at page 409.

These cases are said to rest upon the principle that a vested interest is created in the beneficiary by the terms of the policy, a principle which is fully recognized by this Court. *National Life Ins. Co.* v. *Haley*, 78 Maine, 268. *Laughlin* v. *Norcross*, 97 Maine, 33. *Tremblay* v. *Etna Life Ins. Co.*, 97 Maine, 547, 553.

But in *Hopkins* v. *Northwestern Life Assur. Co.*, (C. C. A.) 99 Fed., 200, it was held that the beneficiary does not take a vested interest, where the policy and by-laws, permit a change of beneficiary by agreement between the insured and the company, without the knowledge or consent of the plaintiff. Such is the law in this State. *McManus* v. *Peerless Casualty Co.*, 114 Maine, 98; and in Massachusetts, *Marsh* v. *American Legion of Honor*, 149 Mass., 512, 515; and in New York, *Shipman* v. *Protected Home Circle*, 174 N. Y., 398, 409; in the case last cited and in *Davis* v. *Royal Arcanum*, supra, it was expressly decided that in a beneficiary association of this kind, the beneficiary takes the certificate subject to change without his consent, in accordance with the constitution and by-laws of the

association, and has no vested interest either in the certificate or the money to be paid under it. She has during the lifetime of the member, a mere expectancy; this expectancy is not property. *Masonic Mut. Ben. Soc.* v. *Burkhart,* 110 Ind., 189; 10 N. E., 79; affirmed 11 N. E., 449.

By the certificate issued to Charles E. Wallace the benefit was payable to the plaintiff provided "that this certificate shall not have been surrendered by said member and another certificate issued at his request, in accordance with the laws of this Order;" the case finds that this "Benefit Certificate was held by said Charles E. Wallace, without surrender or change, until the date of his death." Nothing further appears in the reported case as to the right of the member to change the beneficiary without the latter's consent.

But in the printed copy of the Charter, Constitution and General Laws of the Order furnished us, which we understand we are to regard as a part of the case although not mentioned in the report, we find that by section four of Law XV: "A member may, at any time when in good standing, surrender his Benefit Certificate and have a new one issued to him by paying a fee of fifty cents. Should a Benefit Certificate be in possession or under the control of parties who refuse to turn it over so that the member can surrender it, the member may make affidavit in writing, stating the facts and waiving all rights thereunder, and shall thereupon receive a new certificate in its place, payable to such beneficiaries as he may desire within the class allowed by law."

It is therefore the opinion of the Court that the plaintiff did not obtain a vested interest in the certificate in question at the time the same was issued, or in the money to be paid thereon, which could not be defeated by a change in the terms upon which the death benefit should be payable, made in accordance with the constitution and by-laws of the Order, although without her actual knowledge and consent; that she had during the lifetime of her husband a mere expectancy dependent upon the terms of the contract existing at the time of his death, and that the by-law which became effective July 1, 1917, is applicable to the certificate in suit.

In accordance with the terms of the report the entry must be,

*Judgment for plaintiff for $223.73*
*without costs.*