IN RE ESTATE OF C. E. REYNOLDS.
IRA E. ATKINSON, ADMINISTRATOR, ET AL., APPELLEÉS, V.
H. B. REYNOLDS ET AL., APPELLANTS.

FILED JULY 24, 1936.  No. 29507.

*George R. Mann, Dwight W. Dahlman* and *George I. Craven,* for appellants.

*John J. Ledwith, Sander, Anderson & Gradwohl, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Day, Paine and Carter, JJ.

Eberly, J.

This is an appeal from a judgment or decree rendered by the district court for Lancaster county on December 1, 1934, in a case entitled, "In the Matter of the Estate of C. E. Reynolds, Deceased," then and there pending on appeal from the county court of Lancaster county, Nebraska, and also from the order of that court overruling the motion for a new trial addressed to the aforesaid judgment.

H. B. Reynolds (formerly executor of the last will of C. E. Reynolds, deceased), and Francis V. Robinson, as administrator of the estate of E. C. Wilson, deceased (said Wilson also having been a coexecutor of the last will of C. E. Reynolds, deceased), are the appellants.

The judgment appealed from, in addition to a general finding against the appellants, contained as a specific finding: "The former executors of this estate, H. B. Reynolds and E. C. Wilson, have failed to account for, and should be required to account for, property and estate of $10,446." The judgment entered thereon recited that appellants, "and each of them, be and they hereby are ordered and required to deliver and pay to Ira E. Atkinson, administrator *de bonis non* herein, unadministered property and estate of $10,446, with interest thereon at 6 per cent. per annum from this date; * * * that the foregoing is additional to those assets shown in the final account filed by H. B. Reynolds, all of which the said H. B. Reynolds is specifically ordered and directed to turn over and deliver to the said administrator *de bonis non*."

The record discloses that H. B. Reynolds, as sole surviving executor of the last will and testament of C. E. Reynolds, deceased, filed his final report as such, in the county court of Lancaster county, Nebraska, on January 18, 1934. Objections were filed thereto by Ann M. Reynolds, as widow, devisee and legatee, which were duly adopted by Ira E. Atkinson, as administrator *de bonis non* of said estate. Francis V. Robinson, administrator of the estate

of E. C. Wilson, deceased, in behalf of his decedent (who was in his lifetime coexecutor of the last will of C. E. Reynolds, deceased), filed, in behalf of the estate represented by him, a final report which was also challenged by Ann M. Reynolds. There were also objections filed to said final reports by H. B. Muffly as trustee in bankruptcy of the Federal Trust Company. A hearing was had which resulted in a finding and judgment by the county court of Lancaster county against H. B. Reynolds and the estate of E. C. Wilson, deceased, and ordering and requiring each of them to deliver and pay to Ira E. Atkinson, administrator *de bonis non,* unadministered property and estate of $10,-000, together with interest thereon. An appeal from this judgment to the district court for Lancaster county, Nebraska, resulted as hereinbefore stated.

A careful consideration of the pleadings and evidence discloses that the proceedings were prosecuted by the objectors exclusively on the theory that the proceeds of a certain life insurance policy on the life of C. E. Reynolds, or at least a sufficient part thereof to pay the claims allowed against his estate, constituted assets of the estate of C. E. Reynolds, which it was the duty of his executors, as such, to receive, collect, care for, safeguard, and pay over to the claimants thereto entitled, and which they had failed to do.

The nature of this trust fund and the obligations of the executors in reference thereto are, therefore, the controlling questions in this case.

To sustain liability against the appellants in this case, it is essential that this trust fund, or some portion thereof, be deemed to be within the scope of, or included in, the statutory direction that "Every executor * * * shall, within three months after his appointment, make and return, under oath, into the county court from which he received his letters, a true inventory of the real estate, and of all the goods, chattels, rights and credits of the deceased which shall have come into his possession or knowledge." Comp. St. 1929, sec. 30-401. Unless embraced in the classes of

property thus enumerated, the trust fund in question constitutes no part of the assets of the estate, and it is only in their dealings with the assets of their decedents' estates that executors and their bondsmen incur liability.

A careful study of the record, in connection with the briefs of the parties, discloses that there are no vital facts in serious dispute, so far as the controlling question is concerned.

The following will aid in depicting the situation here presented:

C. E. Reynolds died on December 27, 1930. At and prior to his death he was the owner of 503 shares of the capital stock of the Federal Trust Company, and also possessed the controlling stock of the Federal Credit Company, both of Lincoln, Nebraska. He was in truth the managing officer of both institutions, reputed rich, and a leader in the local business world. He left a last will and testament, bearing date of June 13, 1930, which was in due course admitted to probate. H. B. Reynolds and E. C. Wilson, named therein as executors, were duly appointed, qualified, and entered upon the performance of their duties.

This will provided in "Part One:" "I direct that my just obligations, if any, the expenses of last illness and burial, and the expenses incident to the administration of my estate, shall all be first fully paid."

Then following as "Part Two" were bequests for the benefit of his children, to be handled by trustees.

In "Part Three," "all the capital stock which I may own at the time of my death in both the Federal Trust Company and the Federal Credit Company" was bequeathed to trustees named, who were charged with carrying on the business in which these corporations were engaged, with paying the dividends accruing on his stock to his wife, and finally with selling and disposing of the capital stock, to them devised, and transmitting the proceeds to Ann M. Reynolds, his wife.

In "Part Five," all the rest, residue and remainder of the deceased's estate was bequeathed to his wife, Ann M. Reynolds.

At the time of his death, C. E. Reynolds was insured in the sum of $50,000 by the terms of a life insurance policy issued by the Aetna Life Insurance Company, which was payable, "upon receipt at its home office of due proof of the death of Corl E. Reynolds (herein called the insured), to the beneficiary, Federal Trust Company, Lincoln, Nebraska, as trustee," and which policy contains the following recital:

"The Aetna Life Insurance Company of Hartford, Connecticut, shall not be responsible for the application or disposition of the proceeds of this policy by the trustee, and payment to and receipt by the trustee shall be a full discharge of the liability of said insurance company hereunder."

On August 21, 1930, Corl E. Reynolds, herein referred to as C. E. Reynolds, entered into a trust agreement with the Federal Trust Company with respect to this $50,000 policy of insurance, which, in the first and second paragraphs thereof, provided, among other things, for the collection of the amount due upon such policy, after the death of Reynolds, by the Federal Trust Company, and authorized the deduction by the latter of all payments theretofore advanced by this trust company in the payment of premiums accruing on the policy, together with interest thereon at 6 per cent. per annum.

The third paragraph of this trust agreement provided:

"The trustee shall, after making the payments called for by paragraph designated Second hereof, pay all the just debts owing by the grantor at the time of his death, not including, however, notes to life insurance companies on life insurance policies, and not including any note or notes which the grantor may owe, the proceeds of which were turned over to some company in which the grantor was interested and for the full use and benefit of such company."

By the fourth paragraph the balance of said trust fund remaining after making the payments above directed was ordered to be turned over to the Federal Trust Company

of Lincoln, Nebraska, to be used by it without interest for the period of two years after the death of C. E. Reynolds. At the end of the two-year period, or sooner if the control of the Federal Trust Company should change, certain specific payments were directed to be made to the officers and employees of the trust company.

There was also incorporated in this instrument a provision that, in the event that the sum for distribution was more than sufficient to pay the sums directed, then the excess of balance then remaining, "after making full distribution, shall be given to the Federal Trust Company, absolutely."

It appears that on December 31, 1930, E. C. Wilson was elected president of the Federal Trust Company, and H. B. Reynolds was elected executive vice-president of the same company. Both continued to serve in their respective offices in the Federal Trust Company until April 1, 1933; and the two persons named continued to serve as executors from date of appointment until December 8, 1933.

It also appears that, due to an error in the statement of the age of assured in his application, certain deductions were made by the insurer, so that the total amount paid over to, and received by, the Federal Trust Company on January 17, 1931, was the sum of $47,934.66, which on that date was deposited in "Account No. 1" of the Federal Trust Company with the Continental National Bank. The amounts advanced on premiums by the Federal Trust Company, with interest at 6 per cent., were then deducted from this sum. This action is not complained of in the instant case.

Dissensions having arisen between the parties in interest, on April 25, 1931, an action was instituted by the Federal Trust Company, under the provisions of sections 20-21,140 to 20-21,155, Comp. St. 1929, in the district court for Lancaster county, to determine the validity, force and effect of the trust agreement entered into by and between C. E. Reynolds and the Federal Trust Company concerning the $50,000 insurance fund heretofore referred to. Among the

parties defendant in that proceeding were Harry B. Reynolds, Everett C. Wilson, as individuals and also as executors of the last will of C. E. Reynolds, deceased, Ann M. Reynolds, widow of C. E. Reynolds, deceased, Ira E. Atkinson, John J. Ledwith, Leonard W. Reynolds, and others. Issues were duly joined by the defendants named, and after trial in the district court judgment was, on the 17th day of December, 1931, there entered determining the trust agreement invalid, and ordering the Federal Trust Company, as trustee, to pay the fund in question, together with interest thereon, to the Federal Trust Company as sole owner thereof, and not subject to the conditions and obligations of the trust agreement in question. An appeal was prosecuted to this court wherein, on April 7, 1933, the judgment of the district court for Lancaster county was reversed, and the validity of the trust agreement was in all things confirmed. See *Federal Trust Co. v. Damron,* 124 Neb. 655, 247 N. W. 589.

On June 10, 1933, a judgment on the mandate in said cause was entered in the district court for Lancaster county, in part, as follows:

"It is therefore ordered, adjudged and decreed, by the court, that the prayer of the plaintiff for instructions and the determination of the rights and duties and obligations of plaintiff in the execution of its trust be, and the same hereby is granted; that the plaintiff be, and hereby is ordered and instructed to recognize and enforce each and every one of the provisions of the contract of August 21, 1930, between C. E. Reynolds and the Federal Trust Company relative to the proceeds of the insurance policy involved in this action, exactly as is therein provided; that the plaintiff and the defendants Ira E. Atkinson * * * and John J. Ledwith, and each of them be, and they hereby are perpetually enjoined and restrained from in any manner interfering with the strict enforcement of said agreement; that the plaintiff, as trustee, pay the proceeds of said policy, together with interest thereon, to the parties entitled thereto as set forth in said agreement," etc.

This judgment is concededly in full force and effect, and now constitutes the law of the case.

Further, such judgment, duly rendered upon personal appearance as to all parties to the suit, creates an estoppel, and bars any further suit upon the same cause of action between such parties or their privies, and precludes any further litigation between the parties thereto and their privies, of the points and questions put in issue and there decided. 34 C. J. 507.

The construction of this trust agreement, thus made, is final and binding. Comp. St. 1929, sec. 20-21,141.

No part of the funds here in suit was ever actually paid over by the Federal Trust Company, as trustee, to E. C. Wilson and H. B. Reynolds, as executors of the last will of C. E. Reynolds, deceased.

But, further, it may be said that it appears, without reference to the forms made use of to accomplish the result, that after the date of depositing these insurance trust funds in its "Account No. 1" with the Continental National Bank, the Federal Trust Company (of which E. C. Wilson and H. B. Reynolds were then the active managing officers) exercised over it the same powers and treated it exactly as an ordinary deposit is treated by a commercial bank, and the proceeds were used by the Federal Trust Company in its regular business. When the Federal Trust Company was adjudicated a bankrupt by the United States district court for the district of Nebraska, Lincoln division, on June 16, 1933, this trust fund had been, in this manner, substantially entirely expended. It will be noted in passing that this course of business was in strict accordance with the judgment of the district court for Lancaster county, entered on December 17, 1931, and both E. C. Wilson and H. B. Reynolds vacated their respective offices with the Federal Trust Company on April 1, 1933, six days prior to the reversal of this district court judgment by this supreme court.

Assuming, *arguendo*, that the terms of the judgment of the district court subsequently reversed now afford no protection to appellants, and that this method of conducting

the business constitutes an unquestioned breach of trust on part of the Federal Trust Company, and imposes a personal liability upon Wilson and Reynolds as the executive officers in active charge of its business, the controlling question still remains, viz.: Does this fact create a legal liability in favor of the trustee in bankruptcy and those represented by him, or does it exist in favor of the administrator *de bonis non* of the Reynolds estate? It is quite obvious that it cannot create a double liability. But one replacement and one compensation for a loss thus caused is all that the policy of the law requires.

In this connection, the claim is made that Wilson as president and H. B. Reynolds as executive vice-president improperly and unlawfully drew from the Federal Trust Company more than $20,000 in salaries. The evidence discloses that these parties were duly elected to the offices they occupied. Their respective salaries were approved by the directors. They received and took nothing but what was within the limitation thus fixed. The ultimate failure of the Federal Trust Company appears to be due to transactions it engaged in when under the management of C. E. Reynolds, long prior to their assumption of control over its affairs. The only possible basis of the claim of wrongful receipt of salaries is that the salaries received by Wilson and Reynolds were paid out of the trust assets possessed by the Federal Trust Company as trustee and not out of the corporate funds of that institution. Conceding this claim to exist, *arguendo*, in the instant case, the conclusion follows that such conduct would amount to a tort affecting the property of a bankrupt corporation, and invokes the application of the principle that "A right of action for a tort affecting the property of the bankrupt passes to the trustee." 7 C. J. 131. See, also, *Fillebrown v. Hayward,* 190 Mass. 472, 77 N. E. 45.

The essential nature of the transaction out of which the conflicting claims of the parties in this case arise is a provision for the discharge of his obligations, or certain of them, by a debtor out of his life insurance. In the ordinary

course of business affairs, to accomplish this result two general methods are followed, viz.: (1) Certain creditors are specifically provided for either as designated individuals or as members of a defined class; or (2) the proceeds of the policies are made payable to the decedent's estate and thus incorporated therein as part of the assets thereof.

"Ordinarily the proceeds of a life insurance policy are payable to the executor or administrator of insured as assets of his estate where by the terms of the policy the proceeds are payable to insured, his estate, his legal representatives, his executors or administrators, his 'executors, administrators, or assigns,' or even his 'heirs, executors, administrators, or assigns.'" 37 C. J. 565.

It is quite obvious that in the instant case C. E. Reynolds wholly failed to indicate an intention, in the usual and customary manner, that the proceeds of the $50,000 policy should become assets of his estate. He left this policy payable "to the beneficiary, Federal Trust Company, Lincoln, Nebraska, as trustee."

The general rule is: "The general creditors of insured have no claim to the proceeds of a policy taken by their debtor for another's benefit, unless the beneficiary has consented to such a claim." 37 C. J. 588.

Certain established principles also become important in determining the rights of beneficiaries named or designated as such in life insurance policies.

"The proceeds of a policy, by its terms payable to a creditor, inure to him, at least to the extent of his debt, free from the claims of other creditors or insured's family." 7 Cooley, Briefs on Insurance (2d ed.) p. 6495.

See, also, *Belknap v. Johnston,* 114 Ia. 265, 86 N. W. 267; *Maynard v. Life Ins. Co.,* 132 N. Car. 711, 44 S. E. 405; *Andrews v. Union Central Life Ins. Co.,* 92 Tex. 584, 50 S. W. 572; *Andrews v. Union Central Life Ins. Co.,* 24 Tex. Civ. App. 425, 58 S. W. 1039; *Fitzgerald v. Rawlings,* 114 Md. 470, 79 Atl. 915; *Morrow v. National Life Ass'n,* 184 Mo. App. 308, 168 S. W. 881.

"The right of a creditor named as beneficiary is not cut

off, though the debt itself is barred by the statute of limitations." 7 Cooley, Briefs on Insurance (2d ed.) p. 6498.

See, also, *Townsend v. Tyndale,* 165 Mass. 293, 43 N. E. 107; *Insurance Co. v. Dunscomb,* 108 Tenn. 724, 69 S. W. 345.

And it is a well-established principle that "A named beneficiary takes insurance money, if at all, directly by the terms of the contract, and not derivatively, or in the capacity of heir or legal representative of the insured." 2 Couch, Cyclopedia of Insurance Law, 1043, sec. 354. See, also, *Wallace v. United Order of the Golden Cross,* 118 Me. 184, 106 Atl. 713.

So, too, "If an insurance policy is payable to a designated beneficiary having a vested interest, or has been absolutely assigned, it forms no part of the insured's estate, and is not liable to an inheritance or succession tax." 2 Couch, Cyclopedia of Insurance Law, 1033, sec. 349.

And, in this regard, it is not necessary to designate beneficiaries of a trust by name, other proper description suffices. *Murphy v. Murphy,* 190 Ia. 1221, 181 N. W. 398.

So, also, the rule is unquestioned that "By contract the creditor named as beneficiary (in a life insurance policy) may be under obligation to account for the proceeds after satisfaction of the debt, and of expenses incurred in keeping up the policy, although to the extent of the indebtedness owing to the creditor the policy is not by its terms payable to the executor or administrator of insured and does not become the property of his estate." 37 C. J. 569.

The principle is also universally accepted that trustees may be named in the policy to hold for beneficiaries ultimately intended to receive the proceeds thereof. 37 C. J. 569.

And, it is likewise true that the right to the proceeds of a policy of life insurance is conferred or excluded by agreement. 37 C. J. 571.

The authorities cited not only fully sustain, but render inevitable, the conclusion on this subject which the standard text-books on law state as a rule, substantially as follows:

"The proceeds of a life insurance policy in which a third person is named beneficiary belong exclusively to such beneficiary as an individual; they are not the property of the heirs of insured, are not subject to administration, and cannot properly be claimed or received by the administrator or other legal representative of insured as assets of his estate." 37 C. J. 566. See, also, *White v. White,* 11 Tex. Civ. App. 113, 32 S. W. 48.

The question now remains as to whether the trust agreement of August 21, 1930, hereinbefore referred to, which was employed by the insured to express his intentions, is effective to remove the proceeds of the $50,000 policy from the scope of the rule last quoted. This agreement establishes an "insurance trust." It is neither exceptional nor novel. On this subject, a standard work on insurance law says, in part:

"Although the subject of 'insurance trusts' is one which is not strictly within the scope of the present work, it is so important, and of such growing use, that it has been deemed advisable to refer to it briefly. Generally speaking, an 'insurance trust' is an agreement between a person whose life is insured and a trustee, usually a trust company, whereby the insurance money, the cash proceeds of the policy, is paid directly to the trustee for its investment and distribution to designated beneficiaries in any such manner, or at any such time or times, as the insured has directed in his trust agreement with the trustee. * * * The advisability of the plan arises from the fact that it is extremely flexible and enables the insured to provide for any plan of distribution, however flexible, that he may choose." 2 Couch, Cyclopedia of Insurance Law, 1048, sec. 355.

Considered then as an "insurance trust," in the technical sense of that term, in view of the present litigation the first controlling rule that engages our attention is: "No one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust." Restatement, Trusts, sec. 200. And, under the above text, the following

appears: "Comment. a. Settlor and his successors in interest. Neither the settlor nor his heirs or personal representatives, as such, can maintain a suit against the trustee to enforce a trust or to enjoin or obtain redress for a breach of trust. * * * b. Persons incidentally benefited. A person who incidentally benefits from the performance of the trust, but who is not a beneficiary of the trust, cannot maintain a suit to enforce the trust."

In the present case the beneficiaries of the insurance trust are persons identified by membership in a restricted class of creditors of the settlor of the trust. At the death of C. E. Reynolds they become certain as to identity and definite as to their respective interests.

The rule is: "The members of a definite class of persons can be the beneficiaries of a trust." Restatement, Trusts, sec. 120.

Again, "There may be a single beneficiary or several beneficiaries of a trust." Restatement, Trusts, sec. 113.

So, too, "The extent of the interest of the beneficiary of a trust need not be definite at the time of the creation of the trust if it is definitely ascertainable within the period of the rule against perpetuities." Restatement, Trusts, sec. 129.

As to the duties which the trustee under the terms of the "insurance trust" is required to perform, the accepted principle is: "The trustee is under a duty to the beneficiary not to delegate to others the doing of acts which the trustee can reasonably be required personally to perform." Restatement, Trusts, sec. 171.

In connection with this rule is the added requirement: "The trustee is under a duty to the beneficiary to take reasonable steps to take and keep control of the trust property." Restatement, Trusts, sec. 175. And, under this last-quoted text, it is stated: "Comment: * * * f. Exclusive control. The duty of the trustee is not only to take and keep control, but to take and keep exclusive control."

In addition to the foregoing, the adjudications sustain the rule, viz.: "In executing the trust, the trustee must pay

over the trust estate or proceeds thereof to the person or persons entitled thereto, directly or through his or their representatives, and his liability to the beneficiaries is not discharged by payment to a person not entitled thereto, even though he acts under advice of counsel, unless the beneficiary elects to proceed against the payee." 65 C. J. 838.

It is quite obvious that rights conferred in and vested in the Federal Trust Company, as trustee, by the terms of this insurance trust, as well as the duties enjoined thereby, considered in the light of the authorities referred to, render inevitable the conclusion that the proceeds of the $50,000 policy are receivable by the *cestuis que trustent* designated by the insurance trust as their individual property, and the same are not subject to administration and cannot properly be claimed or received by the administrator, or other legal representatives of the deceased, C. E. Reynolds, as property of his estate. The correctness of this conclusion appears even more clearly when the existing available remedies for defaults of the trustee in the payment of the amounts directed are considered. The rule appears to be that if the trust has terminated by operation of law, or otherwise, and the property has vested in the *cestui que trust*, the latter may after that time maintain an action on the title. "So if a sum is set apart as income due to the *cestui que trust*, and the trustee makes an express promise to pay it, an action at law may be maintained." 2 Perry, Trusts and Trustees (7th ed.) p. 1440. This equitable procedure indicated is in strict harmony with our code requirement that "Every action must be prosecuted in the name of the real party in interest." Comp. St. 1929, sec. 20-301.

The insurance trust in effect is a contract made for the benefit of third persons with the Federal Trust Company, in which the trust company has made a definite promise to pay the beneficiaries designated by name, description or otherwise, and none other. In this state, "Where one person makes a promise to another, upon legal consideration, for the benefit of a third person, such third person can

maintain an action on the promise, although the consideration does not move directly from him." As supporting this, see *Shamp v. Meyer,* 20 Neb. 223, 29 N. W. 379; *Barnett v. Pratt,* 37 Neb. 349, 55 N. W. 1050; *Kaufman v. United States Nat. Bank,* 31 Neb. 661, 48 N. W. 738; *Hale v. Ripp,* 32 Neb. 259, 49 N. W. 218; *Doll v. Crume,* 41 Neb. 655, 59 N. W. 806; *Kaufmann v. Cooper,* 46 Neb. 644, 65 N. W. 796; *Meyer v. Shamp,* 51 Neb. 424, 71 N. W. 57; *Morrill v. Skinner,* 57 Neb. 164, 77 N. W. 375; *Stanton Nat. Bank v. Swallow,* 113 Neb. 336, 203 N. W. 561; *Tecumseh Nat. Bank v. Best,* 50 Neb. 518, 70 N. W. 41.

We are committed to the further rule: "One not a party to a contract may maintain an action thereon when such contract was made for his benefit or the benefit of a class to which he belongs." *Rohman v. Gaiser,* 53 Neb. 474, 73 N. W. 923.

Thus, an ample Code remedy is provided for the actual beneficiaries of the insurance trust, but for them only.

However, this principle of liability has been modified to the extent that it is required that "A party seeking to avail himself of the terms of a contract between other parties must do so subject to all its conditions and restrictions." *Simms v. Summers,* 39 Neb. 781, 58 N. W. 431.

So, there can be no recovery by the estate of C. E. Reynolds or its executors and administrators because the insurance trust has not designated either as a beneficiary. And, again, there can be no control exercised over the care of the property and over the payments to be made to beneficiaries, for by the terms of the insurance trust these powers and rights are expressly conferred upon the Federal Trust Company, and it or its successors in interest only may exercise them. The express terms of the insurance trust preclude a recovery by the executors of the last will and testament of C. E. Reynolds, deceased, of any part of the proceeds of the $50,000 policy, because the insurance trust, created and settled by C. E. Reynolds in his lifetime, confers upon the trustee of his choice full and absolute power and control thereof.

It thus appears from the present record that at all times the Federal Trust Company was entitled to full and complete possession and control of the entire trust fund here in suit. It was charged with the duty of exercising due diligence in ascertaining and paying the beneficiaries identified in the insurance trust, and as required by its terms. It owed the estate of C. E. Reynolds and the executors of his last will no duty whatever, so far as these trust funds were concerned. No part of the trust funds here in suit ever constituted assets of the Reynolds estate, and neither were the executors of his last will ever entitled to demand, take over, and receive or retain control or possession thereof from the trustee, to whose possession and control these funds were given. The law at no time enjoined any duties upon these executors with reference to the trust funds, and it was therefore legally impossible for them, in their official capacities, to incur any liability therefor.

Thus, it appears that the district court erred in the entry of the judgment appealed from. Such judgment, therefore, is reversed and the cause remanded to the district court, with directions to reverse and set aside the judgment heretofore entered in this cause by the county court of Lancaster county and remand this cause to that court for further proceedings in harmony with this opinion.

REVERSED.