400 P.2d 758

**Henry CHILD, Plaintiff and Appellant,**

**v.**

**Coy J. HAYWARD and Aldin O. Hayward, Defendants and Respondents.**

**No. 10199.**

Supreme Court of Utah.

April 13, 1965.

2.  E. g., Kent v. Ind. Comm., 89 Utah 381, 57 P.2d 724 (1936).

Lorin N. Pace, Salt Lake City, for appellant.

K. Roger Bean, Layton, John H. Allen, Salt Lake City, for respondents.

CROCKETT, Justice.

Henry Child, plaintiff-seller, sues Coy and Aldin Hayward, defendant-buyers, for rescission of a real estate contract, or in the alternative for damages, on the ground that defendants breached a covenant therein to convey a portion (a 45x122-foot strip) of the land in question to plaintiff's adult son, Eugene Child.

Upon trial to the court without a jury, at the close of plaintiff's evidence, the court granted defendant's motion to dismiss. Acting pursuant to Rule 41(b), U.R.C.P., the court made findings of fact and entered judgment thereon. The purpose of this procedure is that when the court is the trier of the facts, and it appears to him that under the plaintiff's evidence he would not be able to prevail in any event, the trial court can eliminate the time and effort involved in requiring the defendant to put on his evidence, and make its findings at that point. When the court elects to do so and makes plenary findings, it is just as though all of the evidence in the case had been presented. In that event it is our duty to review the evidence and all reasonable inferences fairly to be drawn therefrom in the light most favorable to the findings and judgment. And they must not be disturbed if there is any substantial basis therein upon which reasonable minds could so conclude.[1]

In 1957, defendant Aldin Hayward was in the process of acquiring property at the corner of Orchard Drive and 6300 South in Bountiful, Utah, looking forward toward the building of a supermarket. For that purpose he negotiated with plaintiff Henry Child for a rectangular piece of

---

[1]. For discussion of reasons for and advantages of this procedure, see Lawrence v. Bamberger RR. Co., 3 Utah 2d 247, 282 P.2d 335 (1955). See also 5 Moore, Federal Practice, § 41.13(4) (2d ed. 1964) ; 2B Barron and Holtzoff, Federal Practice and Procedure, § 919 and §§ 1130–37 (Wright ed. 1961).

land 122 feet wide and 209 feet long at that corner. One of the conditions insisted upon by the plaintiff was that the defendants agree to reconvey the south 45-foot strip of this land to the plaintiff's son, Eugene Child, who owned a parcel of land adjoining this 45-foot strip. It is not spelled out in the record just why Henry Child chose this rather circuitous method of getting this 45-foot strip into the hands of his son, Eugene. However, it is apparent that there have been strained relations in the family.[2] It is intimated that Henry had made an abortive attempt to give this land to his son which had been refused. His purpose is not important here, except that for reasons sufficient to himself, he required the defendants to agree to convey that land to Eugene.

When the parties had reached accord upon the matter, on April 4, 1958, they went to the defendants' attorney, Mr. Wendell Hammond, had their understanding put into writing, and the defendants paid plaintiff $100 to bind the bargain. It is significant to observe that the plaintiff was aware that the defendants had negotiated with other property owners there to purchase land for the proposed supermarket, and they also informed plaintiff that they would deal with his son, Eugene, to obtain his property, which was also needed in the project. This was accomplished five days later. On April 9, 1958, the defendants contracted with Eugene to purchase a portion of his land, and included with it the 45-foot strip in question.

A few weeks after the above occurrences, on June 2, 1958, after further negotiations about the boundaries, the parties executed a more formal and complete contract selling plaintiff's property to the defendants. At that time they paid him another $400, completing the $500 down payment required. The following year, on March 26, 1959, the defendants paid plaintiff $580 as the first annual payment. However, in March of 1960, and again in March, 1961, plaintiff refused to accept the annual payments tendered. It was on August 14, 1961, over three years after the sale, that plaintiff first served notice of rescission on the defendants.

Plaintiff's claim for redress is based upon the charge that defendants failed to inform him of their contract of April 9, 1958, to acquire from his son, Eugene, the 45-foot strip of property he desired Eugene to have. He contends that this silence and concealment constituted a fraudulent misrepresentation, but for which he would not have sold his property to the defendants, and that this gives him a right of rescission. The main difficulty with the plaintiff's position is that the trial court made findings adverse to him, and that there is a reasonable basis in the documentary and other

2. See the case of Child v. Child, 8 Utah 2d 261, 332 P.2d 981 (1958).

evidence to sustain them: that plaintiff divested himself completely of any right or interest in the land in question; that he did not retain control of any kind over it; and that he was not to receive anything further for it from the defendants, from Eugene, or from any other source. Accordingly, the trial court was correct in its conclusion that he has sustained no damage.[3] It may be that plaintiff would not have sold his property to the defendants if he had known that his son would so quickly sell them the portion he was to receive. But such conjecture is not sufficient to sustain an action to recover for fraudulent misrepresentation.[4]

Plaintiff also postulates that under the circumstances the defendants became trustees of the property for Eugene. Under such a theory, Henry Child would be the creator of the trust. Since he had divested himself completely of any interest whatsoever in the trust res,[5] and had not reserved any right or power of revocation therein, any such trust would be irrevocable insofar as he is concerned[6] and he would therefore be without any standing to sue for an alleged breach of trust.[7] Any such right would belong to the cestui que trust, Eugene Child.

As to the other arguments advanced by plaintiff, it should be kept in mind that Eugene Child is not a party to this action, and that whatever rights he may have are not involved herein. Neither is the plaintiff's right to obtain a decree of specific performance to have the 45-foot strip of land conveyed to Eugene. This is not disputed, and the defendants indicate that they are ready and willing to do so.[8] But that is not the relief which the plaintiff seeks. As indicated at the outset, he sues to rescind the contract and to recover the property for himself. For the reasons we have discussed in this opinion the trial court was correct in rejecting this demand.

Affirmed. Costs to defendants (respondents).

HENRIOD, C. J., and McDONOUGH, WADE, and CALLISTER, JJ., concur.

---

3. That damage is an essential element to an action for fraud, see Pace v. Parrish, 122 Utah 141, 247 P.2d 273 (1952).
4. See In re Madsen's Estate, 123 Utah 327, 259 P.2d 595, 605-606 (1953); see generally 37 C.J.S. Fraud §§ 40-41 (1943) (citing cases).
5. See Restatement (Second) Trusts, § 442 (1958); Gomez v. Cecena, 15 Cal.2d 363, 367, 101 P.2d 477, 478 (1940).
6. See Restatement (Second) Trusts, § 330; accord, Skeen v. Marriott, 22 Utah 73, 61 P. 296 (1900); 2 Williston, Contracts § 396 (3d ed. 1959).
7. See Restatement (Second) Trusts, § 200, comment b; cf. In re Estate of Reynolds, 131 Neb. 557, 569-70, 268 N.W. 480, 487 (1936).
8. See 2 Williston, Contracts, § 359 at 854 (3d ed. 1959); 4 Corbin, Contracts, § 812, at 239 (1951); Croker v. New York Trust Co., 245 N.Y. 17, 156 N.E. 81 (1927).